109 P.3d 714

VFP VC, a Washington limited part-
nership and Nick S. Vidalakis,
Plaintiffs–Respondents,

v.

DAKOTA COMPANY, an Idaho
corporation, Defendant,

and

Larry Durkin, an individual,
Defendant–Appellant,

and

Fred Meyer Stores, Inc., a Delaware
corporation, Defendant–
Respondent.

Dakota Company, an Idaho corporation,
Counterclaimant,

v.

VFP VD, a Washington limited
partnership, Counterclaimant–
Respondent.

Fred Meyer Stores, Inc., a Delaware
corporation, Cross Claimant–
Respondent,

v.

Dakota Company, an Idaho corporation,
Cross Defendant,

and

Larry Durkin, an individual, Cross
Defendant–Appellant.

No. 29436.

Supreme Court of Idaho,
Boise, December 2004 Term.

Jan. 26, 2005.

Rehearing Denied March 17, 2005.

Marcus, Merrick, Montgomery, Christian & Hardee, LLP, Boise, for appellants. Gale M. Merrick argued.

Davison, Copple, Copple & Cox, Boise, for respondents. Heather A. Cunningham argued.

BURDICK, Justice.

## NATURE OF THE CASE

This case arises from a breach of a promissory note and fraudulent acts committed by the Appellant, Larry Durkin (Durkin). A jury found Durkin to be personally liable and the district court entered a judgment against him in the amount of $903,637.77. Durkin timely appealed. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

Dr. Nick Vidalakis (Vidalakis), Plaintiff/Respondent, met Durkin approximately twenty years ago, when Durkin worked for ShopKo Corporation locating new stores. Vidalakis and his family owed a company called Hermes Associates (Hermes), which developed shopping centers. Because Vidalakis was impressed with Durkin's work, Vidalakis asked Durkin to work with him. Durkin owned a development company called Dakota Company (Dakota), consisting of only Durkin and his wife. Durkin also was the president and shareholder of two other companies called LJD Holdings, Inc. and B & D Foods.

In the December of 1997, Hermes contacted Durkin to assist in the acquisition of land in Meridian, Idaho for the purpose of developing a shopping center. Hermes and LJD Holdings, Inc. entered into an agreement, entitled "Consulting Agreement." Although the named parties to the Consulting Agreement were Hermes and LJD Holdings, Inc., the Dakota Company, not LJD Holdings, Inc., was the company that performed the development and acquisition services under that Consulting Agreement with Hermes. Hermes purchased property located at the southest corner of the Eagle Road and Fairview Avenue intersection (hereinafter, Meridian project).

Vidalakis also believed a location on Federal Way in Boise would be a good location for a shopping center. The parties entered into a similar "Consulting Agreement" for the Federal Way development. Hermes purchased property located on Federal Way (hereinafter, Federal Way project).

After the agreement to develop the two shopping centers, Durkin began suffering financial difficulties and requested a $150,000 loan from Vidalakis. Vidalakis agreed. Durkin signed a promissory note dated March 1, 1998. The promissory note required Durkin to repay the three-year loan beginning July 15, 1998. Any leasing fees, development fees, or acquisition fees owed by Hermes payable to Durkin or his companies were to be applied towards the outstanding balance until fully paid.

In 1998, Hermes marketed to sell its shopping centers. Durkin assisted by accompanying Hermes' personnel and potential buyers on tours of the property in Meridian and Boise. In June 1998, Hermes finalized an agreement, via a Financial Instrument Transaction (FIT) with Developers Diversified Realty to purchase Hermes and most of its shopping centers and land holdings, including the Meridian project. However, Developers Diversified Realty did not want the Federal Way project because it was too far

from completion and therefore was not included in the sale.

Durkin asserts he is entitled to a million dollar bonus for the sale of the Meridian project. Durkin claims Vidalakis promised Dakota the bonus if Hermes successfully sold its undeveloped property and the bulk of its shopping centers, including the Meridian project. Durkin continued to work on the Meridian project for Developers Diversified Realty as their consultant.

After the sale, Vidalakis formed a new company, VFP VC (VFP). The Federal Way project was transferred to VFP. Dakota continued to work on the Federal Way development for VFP. VFP entered into an agreement with Fred Meyer, a large retailer and grocery store chain, to pay a portion of the project's development costs. Durkin, as VFP's agent, was to receive the funds, but checks were to be made payable to VFP. Although Fred Meyer submitted the first seven progress payments to Dakota, the checks were erroneously made payable to Dakota. Dakota properly turned over the first seven progress payments to VFP. However, VFP demanded Dakota immediately notify Fred Meyer, verbally and in writing, that future payments were to be made payable to VFP. In September and October 2000, while Vidalakis was out of the country, Dakota received three more checks from Fred Meyer. Fred Meyer again erroneously made the checks payable to Dakota for progress payments eight (8) and nine (9) in the amount of $272,367.33. Fred Meyer also paid $37,705.50 to reimburse VFP for its payment to Idaho Power for a power transformer to serve the Fred Meyer store. Contrary to VFP's instructions, Dakota deposited the checks into its own account, and did not inform VFP that it had received the funds, nor was the money forwarded to VFP. Durkin and Dakota proceeded to spend the money.

In March 2001, Vidalakis terminated the relationship with Durkin and his companies and filed this lawsuit. Vidalakis sued Durkin personally to recover on the promissory note; VFP and Vidalakis also sued Durkin and Dakota to recover for the various conversions and frauds against VFP. Because Fred Mey-

er made progress payments eight (8) and nine (9) payable to Dakota, it was named in the suit for breaching the agreement. Fred Meyer cross-claimed against Dakota and Durkin. Durkin and Dakota counter-claimed against VFP and Vidalakis alleging entitlement to unpaid bonuses, including the million-dollar bonus for his role in the FIT. Upon further discovery, VFP amended its complaint to add additional claims of fraud and conversion against Durkin and Dakota.

A week before trial, in a summary judgment motion the district court held Fred Meyer liable to VFP for progress payments eight (8) and nine (9) and the transformer check, for having paid Dakota contrary to VFP's directions. The district court also granted summary judgment in Fred Meyer's favor holding Dakota liable for intentional interference with a contract. The district court denied summary judgment as to Fred Meyer's claim that Durkin should be personally liable for conversion. Prior to trial Fred Meyer assigned its right to pursue Durkin personally to VFP and Vidalakis.

The Friday before trial, Dakota filed for bankruptcy protection under Chapter 11. After hearing motions by the parties regarding the bankruptcy, the district court allowed any and all claims to proceed forward against Durkin, personally. Therefore, when the trial began, the issues were whether Durkin was in default on the promissory note and whether Durkin would be held personally liable to Fred Meyer for failing to forward the progress payments and transformer reimbursement to VFP. Dakota and/or Durkin elected to pursue their rights and claims for the million dollar bonus for their role in the FIT. No other claims were to be litigated. However, during the course of the trial, two other issues were addressed. First, whether Durkin committed fraud when he represented that checks for $420,000 were sent to Boise City for impact fees and Durkin's receipt of a $12,000 bonus for his effort in reducing the impact fees from VFP. Second, whether Durkin committed fraud when he requested a $26,000 change order.

Durkin objected to several of the jury instructions and the special verdict form. The jury returned a verdict in VFP's favor. It

awarded $135,564.94 on the promissory note. It found Durkin liable for conversion on progress payments eight (8) and nine (9) and the transformer payment for a total of $310,072.83. It also found Durkin liable for fraud in the amount of $458,000.00. The jury denied Dakota's and Durkin's claim for the million dollar bonus. The court entered a judgment for $903,637.77 in VFP's favor.

The district court denied Durkin's motion for new trial. It also awarded fees and costs to VFP and Fred Meyer. Durkin timely appealed. VFP attempted collection by way of certain levies and executions to which exemptions and third party claim issues arose, which Durkin also appeals.

### ISSUES ON APPEAL

I. Did the district court comply with the bankruptcy automatic stay statutes?

II. Did the district court properly instruct the jury?

III. Did the evidence support the jury's verdict?

IV. Did the district court properly deny the motion for new trial?

V. Does the cumulative error doctrine apply to this case?

VI. Did the Respondents comply with I.C. § 11–203?

VII. Should either party be awarded attorney fees on appeal?

### ANALYSIS

**I. DID THE DISTRICT COURT COMPLY WITH THE BANKRUPTCY AUTOMATIC STAY STATUTES?**

 We exercise free review over interpreting a statute's meaning and applying the facts to the law. *Martel v. Bulotti*, 138 Idaho 451, 453, 65 P.3d 192, 194 (2003). Durkin argues the district court erred in applying the automatic stay provisions of 11 U.S.C. § 362(a)(1). Durkin contends the district court wrongly allowed the trial to proceed with the inclusion of Dakota's claims and further erred when it asked the jury to determine Dakota's claims in the special verdict form and judgment.

 United States Bankruptcy Code Section 362 (11 U.S.C. § 362) provides, in pertinent part:

(a) a petition filed under section 301 . . . of this title, . . . operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim *against the debtor* that arose before the commencement of the case under this title;

(emphasis added).

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*In re Related Asbestos Cases*, 23 B.R. 523, 527–28 (1982). The automatic stay protects only the bankrupt debtor and does not include actions "against related but independent codefendants." *Id.* at 529–30. The automatic stay "does not protect non-debtor parties or their property. Thus section 362(a) does not stay actions against . . . non-debtor parties liable on the debts of the debtor." *In re Chugach Forest Products, Inc. v. Northern Stevedoring & Handling Corp.*, 23 F.3d 241, 246 (9th Cir.1994). "A petition in bankruptcy does not stay claims, including counterclaims, brought by the debtor." *Mid Kansas Federal Savings and Loan Association of Wichita v. Orpheum Theater Company, Ltd.*, 151 B.R. 560, 563 (1993); *accord Seiko Epson Corp. v. Nu–Kote Intern'l, Inc.*, 190 F.3d 1360, 1364 (Fed.Cir. 1999).

[6] In the instant case, the district court stayed all proceedings against the bankrupt Dakota. The special verdict form and more importantly the judgment entered do not include any findings of liability against Dakota.

The jury found Durkin personally liable for fraud, conversion, and interference with the contracts, not the bankrupt Dakota. Durkin and Dakota opted to proceed against the Respondents for the million dollar bonus counterclaim. The automatic stay provision did not preclude the bankrupt Dakota from pursuing its counterclaim. Therefore, the district court did not err in allowing the jury to consider this counterclaim.

## II. DID THE DISTRICT COURT PROPERLY INSTRUCT THE JURY?

 The standard of review for issues concerning jury instructions is limited to a determination of whether the instructions, as a whole, fairly and adequately present the issues and state the law. *Silver Creek Computers, Inc. v. Petra, Inc.*, 136 Idaho 879, 882, 42 P.3d 672, 675 (2002). If the jury instructions adequately present the issues and state the applicable law, no error is committed. *Leazer v. Kiefer*, 120 Idaho 902, 904, 821 P.2d 957, 959 (1991). However, reversible error occurs when an instruction misleads the jury or prejudices a party. *Howell v. Eastern Idaho R.R., Inc.*, 135 Idaho 733, 740, 24 P.3d 50, 57 (2001). To show error in the special verdict form, Durkin must show the jury was incorrectly instructed on the law at issue or the special verdict form confused the jury. *Le'Gall v. Lewis County*, 129 Idaho 182, 185, 923 P.2d 427, 430 (1996).

1. *Did the trial court properly instruct the jury on forfeiture of an agent's compensation for the agents breach of fiduciary duty?*

 Durkin argues the district court erred in instructing the jury on the issue that an agent forfeits his compensation in the event of a breach of fiduciary duty. He contends Instructions 23 and 24 were given in error. Durkin asserts the Respondents owed one million dollars to the bankrupt Dakota, but all other claims were not presented to the jury because of the automatic stay. Durkin asserts if any breach of fiduciary duty occurred, it occurred on the Federal Way project under a different contract

and after the Meridian project bonus had been earned.

Instruction 23 provided:

It is general rule that an agent who breaches his fiduciary duties may forfeit his entire compensation. However, the rule is not inflexible. After considering the facts of this case, it is within your discretion to adjust the amount of the forfeiture. It making your determination you should consider such factors as the willfulness of the breach, the potential for or actual harm to the principal and whether the agent completed a divisible position [sic] of his contract duties before the breach occurred for which compensation can be determined.

Instruction 24 provided:

If you find from your consideration of all the evidence that Defendant Larry Durkin is entitled to be paid for his services rendered to the Plaintiff then you must determine whether or not Defendant Larry Durkin breached his fiduciary duty to the Plaintiff.

If you find that Defendant Larry Durkin breached his fiduciary duty to the Plaintiff then you must determine whether or not Defendant should forfeit his entire compensation or to adjust the amount of the forfeiture taking into account the willfulness of the breach, the potential for or actual harm to the Plaintiff and whether Defendant, Larry Durkin, completed a devisible [sic] portion of his contract duties before the breach occurred for which compensation can be determined.

As stated above, Dakota's counterclaims are not stayed by operation of filing for bankruptcy. *Seiko Epson Corp.*, 190 F.3d at 1364; *Orpheum Theater Company, Ltd.*, 151 B.R. at 563. More important, however, is Dakota's and Durkin's decision to pursue the bonus counterclaim on the first day of trial. On the opening day, the parties revisited the issue regarding the bankrupt Dakota's counterclaims. Counsel for Dakota stated: "I intend[ ] to pursue the Meridian offset, which is the bonus that we have claimed in connection with the Meridian transaction." The district court accepted Dakota's and Durkin's

request. We find the district court properly heard the Meridian project counterclaim.

■ Durkin next asserts Instruction 24 was incorrect because the fraudulent activity and breach of fiduciary duty presented on appeal did not relate to the Meridian project. However, the jury found neither Dakota nor Durkin had proved they were entitled to any bonus claimed. Therefore, whether they should forfeit the bonus because of a breach of any fiduciary duty is superfluous. Any perceived mistake in the jury instruction does not necessarily require a new trial. *Hook v. B.C. Inv., Inc.*, 125 Idaho 453, 455, 872 P.2d 716, 718 (1994). We find the error in giving Instructions 23 and 24 was harmless.

2. *Did the trial court properly include the issue of leasing fees due Durkin or his companies in the special verdict form?*

■ Durkin argues the district court erred in including the issue of leasing fees due Durkin or his companies in the special verdict form. He argues that this claim had not been pursued by the parties and had been stayed because of Dakota's bankruptcy.

■ The parties agreed the only claim being pursued by Durkin and/or Dakota was the million dollar bonus from the Meridian project. None of the parties tried the leasing fee claims. We agree with Durkin that the issue should not have been included in the special verdict form because it was not an issue tried by the parties. However, Durkin fails to show how inclusion of the issue confused the jury. Because there is no evidence the jury was confused, we find the error to be harmless. *See Le'Gall*, 129 Idaho at 185, 923 P.2d at 430.

3. *Did the trial court properly instruct the jury and include in the special verdict the issues regarding payments due under the promissory note?*

■ Durkin argues the district court confused the jury and prejudiced him by instructing the jury regarding payments due under the promissory note. Durkin asserts that Instruction 7 informed the jury there

was ambiguity in the terms of the repayment under the promissory note, but then the court asked the jury in the special verdict form whether the agreed upon payments had been made.

Instruction 7 provided:

The Court has determined that the terms of the contract are unclear as to the exact meaning of the terms relating to repayment of the promissory note. You must resolve this ambiguity by determining what was intended by the language used. In seeking the intent, you should consider as a whole and the circumstances under which it was made. Language should be given its ordinary meaning, unless it is clear that a special meaning was intended. The intent may also be gathered from any conduct or course or dealings of the contracting persons showing that they construed the doubtful language in the same sense.

The special verdict form asked the jury. "Did Larry Durkin make payments as agreed on the promissory note?"

We find nothing confusing or prejudicial with the instruction or the special verdict form. The district court instructed the jury to first resolve the ambiguity as to how the promissory note should be repaid and then asked the jury in the special verdict form if Durkin complied with the agreement. There is nothing prejudicial or confusing about the instructions or the special verdict form on this issue.

4. *Did the trial court properly include in the special verdict form whether Durkin or Dakota were due any amounts?*

■ Durkin argues the district court erred by asking the jury whether Durkin or Dakota were due any amounts. He asserts the only claim before the jury was the million dollar bonus on the Meridian project. Therefore, by asking whether *any* amounts were due led the jury to believe they were deciding other issues and thus prejudicing Durkin.

The only counterclaim tried by the parties was whether Durkin and/or Dakota were entitled to a million dollar bonus on the Meridian project. The question in the special ver-

dict form did not confuse the jury and therefore, we do not find any error on this issue. *Le'Gall,* 129 Idaho at 185, 923 P.2d at 430.

5. *Did the trial court err in including a reference to B & D Foods and LJD Holdings in the jury instructions?*

■ Durkin argues the district court erred by including B & D Foods and LJD Holdings in the jury instructions. Durkin asserts the reference to these other companies improperly suggested to the jury that these companies may also have been involved in tortious conduct against VFP.

Durkin owned B & D Foods and LJD Holdings. The parties to the consulting agreement were Hermes and LJD Holdings. For some unknown reason Dakota was not the company used in signing the consulting agreement. All the parties understood that it was Dakota performing under the agreement. During the trial, Judi Higley testified that she worked for Durkin and his different companies. She explained that LJD Holdings operated as a food company known as B & D Foods. There was no objection made at trial regarding this testimony.

Only Instruction 31 included any reference to LJD Holdings or B & D Foods. The instruction provided:

> It is an established principle of corporations [sic] law that corporate directors are not liable merely by virtue of their office for fraud or other tortious wrongdoing committed by the corporation or its officers. Instead, to be held liable a corporate director must specifically direct, actively participate in, or knowingly acquiesce in the fraud or other wrongdoing of the corporation or its officers. For Mr. Durkin to be held personally liable for any torts committed by Dakota Co. or LJD Holdings or B & D Foods, the evidence must establish that he specifically directed, actively participated in, or knowingly acquiesced in the fraudulent activities as president of Dakota Co. or LJD Holdings Inc. or B & D Foods.

There is nothing confusing or prejudicial with this instruction. It does not state Dakota, LJD Holdings, or B & D Foods committed fraud. It explains to the jury how a corporate officer or director may be held personally liable for their actions. The reference to LJD Holdings is understandable in light of the fact it was the company that entered into the contract to perform on the Meridian and Federal Way projects, although all parties acknowledge it really was Dakota performing the work and with whom the agreement was made. The reference to the other companies in this instruction does nothing more than ensure that in order to find personal liability on Durkin's behalf, he must have specifically directed, actively participated in, or knowingly acquiesced in the fraudulent activity.

6. *Were the trial court's instructions on the piercing the corporate veil prejudicial?*

■ Durkin argues the trial court erred in submitting Instruction 17—piercing the corporate veil—to the jury. He contends because the instruction was included in the group of instructions for breach of contract on the promissory note and because the debt on the promissory note was Durkin's personally, there was no reason to give the instruction to the jury.[1] Durkin also argues that the instruction was inappropriate for the other various torts claimed by VFP because personal liability is predicated upon the participation in the wrongful conduct or knowingly approving the wrongful conduct. Durkin contends corporations do not commit torts and therefore piercing the corporate veil theory is inapplicable to holding officers personally responsible for the corporation's involvement in fraudulent activity. Finally, Durkin concludes that even if the jury did not need this instruction in deciding personal liability, its inclusion misled and confused the jury. We disagree.

Instruction No. 17 provided:

1. In the general instruction the district court gave to the jury it provided: "... you must follow these instructions. You must consider them as a whole, not picking out one and disre- garding others." The general instructions did not include that the order of the instructions should be disregarded.

There are times when the form of a corporate entity is disregarded and liability is imposed on a corporation's sole shareholder and president of a corporation. This is called the doctrine of "piercing the corporate veil." Two requirements must be met. First, there must be such a unity of interest and ownership that the separate personalities of the corporation and individual no longer exist. Second, there must be a showing that, if the acts are treated as those of the corporation, an inequitable result will follow or that it would sanction a fraud or promote injustice. There are several factors which may be reviewed when considering whether the corporate veil should be pierced. For example, was the sole shareholder acting as president of the corporation; was there a lack of corporate formalities, such as directors' meetings; did the shareholders fail to submit the corporate contract and inventory revisions to he board of directors; and were business transactions completed without approval by any director or officer of the corporation. These factors are not exclusive because the conditions under which corporate entity may be disregarded vary according to the circumstances to the case.

 Piercing the corporate veil is "[t]he judicial act of imposing personal liability on otherwise immune corporate officers, directors, and shareholders for the corporation's wrongful acts." BLACK'S LAW DICTIONARY 1184 (8th ed.2004). The theory allows the fact finder to disregard the corporate form, thereby making individuals liable for corporate debts or making corporate assets reachable to satisfy obligations of the individual. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 917, 591 P.2d 1078, 1084 (1979).

While Durkin is correct that there was no corporate responsibility involved with the promissory note, he is incorrect about the other claims asserted by VFP. VFP asserted two theories to hold Durkin personally liable for fraudulently depositing and spending two of Fred Meyer's progress payments and the power transformer check. Under the first theory VFP explained to the jury that Durkin should not be allowed to use Dakota's corporation status as a shield to escape liability. That even though the jury may find

Dakota committed the fraudulent act they may still find Durkin personally liable if they believe Dakota and Durkin are the same entity as provided in their instructions. In other words, even though Durkin blames Dakota for taking and spending the money, Durkin should be held accountable. Under the second theory of personal liability VFP asked the jury to hold Durkin personally liable for tortiously interfering with a contract between VFP and Fred Meyer even though the checks were run through Dakota's accounts.

We find the district court properly allowed VFP to assert its theory under piercing the corporate veil to the jury. Piercing the corporate veil theory allowed the jury to ignore the corporate form, thereby making Durkin personally liable for Dakota's acts. *Minich,* 99 Idaho at 917, 591 P.2d at 1084. The jury instruction submitted to the jury on this theory was necessary and relevant. The instruction did not prejudice or confuse the jury. The district court did not err in submitting this instruction to the jury.

## III. DID THE EVIDENCE SUPPORT THE JURY'S VERDICT?

 Durkin argues the evidence does not support the jury's verdict. On appeal, questions of fact decided by the jury supported by substantial, competent evidence will not be disturbed. *Boel v. Stewart Title Guar. Co.,* 137 Idaho 9, 43 P.3d 768, 771 (2002).

> By substantial, it is not meant that the evidence need be uncontradicted. All that is required is that the evidence be of such sufficient quantity and probative value that reasonable minds could conclude that the verdict of the jury was proper. It is not necessary that the evidence be of such quantity or quality that reasonable minds must conclude, only that they could conclude.

*Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 736, 518 P.2d 1194, 1198 (1974).

1. *Was the jury's finding that Durkin committed fraud with regard to change order number four (4) for $26,000 supported by substantial competent evidence?*

 Durkin argues the evidence presented at trial was insufficient to support the

jury's finding that he committed fraud with regard to the April 4, 2000 change order for $26,000. VFP contends the jury correctly found Durkin liable for fraud because the change order was not for a "change in conditions" in which the payee, Kriezenbeck was entitled to $26,000.

The evidence at trial showed that subcontractor Kreizenbeck destroyed a private resident's trailer during construction on the Federal Way project. After housing the resident in a hotel, Dakota purchased a $26,000 replacement trailer for the resident. Kreizenbeck reimbursed Dakota the $26,000. Dakota/Durkin submitted a change order requiring VFP to reimburse Kreizenbeck for an unspecified "change in general conditions." Tom Bauwens, a civil engineer who worked for Dakota on the Federal Way project, testified that he thought the change order was to reimburse Kreizenbeck for replacing a mobile home they destroyed during construction on the Federal Way project. However, on cross-examination, Brauwens testified he didn't have any conversations with VFP about the change order.

The jury could have found, based upon the evidence, that Durkin committed fraud by submitting a false change order for "change in general conditions" to VFP. There was substantial, competent evidence supporting the jury's finding that Durkin committed fraud in submitting change order number four (4) to VFP for $26,000.

2. *Was the jury's finding that Durkin committed an intentional interference with the Fred Meyer–VFP contract supported by substantial competent evidence?*

 Durkin argues the evidence presented to the jury did not support a finding that Durkin committed intentional interference with the Fred Meyer–VFP contract. Durkin contends Dakota should be solely liable for the failure to turnover two progress payments and the transformer check to VFP. Durkin contends that because the money taken benefited the corporation and not himself exclusively, he cannot be held personally liable. We disagree.

Durkin fails to understand the necessity or the theory behind VFP's piercing the corporate veil argument. The jury could have disregarded the corporate entity and held Durkin personally liable for the corporation's actions, in this case wrongfully taking and keeping Fred Meyer's money. There was substantial competent evidence to support the jury's finding that Durkin should be personally liable for taking Fred Meyer's two progress payments and the transformer check.

## IV. DID THE DISTRICT COURT PROPERLY DENY THE MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR MOTION FOR NEW TRIAL?

The denial of a motion for JNOV is proper when "substantial evidence supports the jury's verdict." "The standard of review for issues concerning jury instructions is limited to a determination whether the instructions, as a whole, fairly and adequately present the issues and state the law." This Court reviews the grant or denial of a motion for new trial based on an abuse of discretion standard.

*Boll v. State Farm Mut. Auto. Ins. Co.,* 140 Idaho 334, 338, 92 P.3d 1081, 1085 (2004) (internal citations omitted).

Durkin argues the district court erred in denying the motion for new trial. The errors asserted for the motion for new trial are the same errors Durkin alleges in this appeal. We find that the district court did not abuse its discretion in denying the motion notwithstanding the verdict or the motion for a new trial.

## V. DOES THE CUMULATIVE ERROR DOCTRINE APPLY TO THIS CASE?

 Durkin argues there were numerous errors committed in this case. Thus even if this Court finds that the errors thus far are harmless, the accumulation of errors denied him a fair trial.

 "In order to find cumulative error, this Court must first conclude that there is merit to more than one of the alleged errors and then conclude that these errors, when

aggregated, denied the defendant a fair trial." *State v. Sheahan*, 139 Idaho 267, 287, 77 P.3d 956, 976 (2003). Although cumulative error has never been formally adopted in civil litigation in Idaho, the errors in this case do not arise to that level. Therefore, we need not examine if that legal theory applies to civil cases in general.

## VI. DID THE RESPONDENTS COMPLY WITH I.C. § 11–203?

■ VFP attempted collection by way of certain levies and executions to which certain exemptions and third party claim issues arose. Durkin argues the respondents failed to comply with I.C. § 11–203, and therefore the district court erred in its treatment of the third-party exemption claims. Specifically, Durkin asserts the respondents failed to lodge with the district court a copy of the claim to which the motion to contest the third-party claim applied.

Idaho Code § 11–203(b) provides in pertinent part:

The plaintiff or other person in whose favor the writ of execution runs shall have five (5) business days after the date a copy of the claim is delivered or mailed to him by the sheriff within which to file a motion with the court stating the grounds upon which he contests the claim of exemption or third party claim. When the motion is filed, the plaintiff shall lodge with the court a copy of the claim to which the motion pertains.

On November 27, 2002, Durkin filed with the Ada County Sheriff the following documents: (1) Larry Durkin and Annette Durkin's Claim of Homestead Exemption; (2) Third Party Claim of Annette Durkin; (3) Third Party Claim of Farmers & Merchants State Bank; (4) Third Party Claim of Washington Federal Savings; (5) Third Party Claim of Harold Homburg (Annette Durkin's father).

Four business days later, on December 4, 2002, Respondents' attorney filed an affidavit with the district court in support of the objection to the third-party claims. The affidavit was filed stamped December 4, 2002. Attached to the attorney's affidavit were copies of the five third-party claims.

The respondents complied with I.C. § 11–203(b) by lodging, although attached to an affidavit, the claims subject to the motion to contest the third-party claims. The district court did not err in considering the motion.

## VII. SHOULD EITHER PARTY BE AWARDED ATTORNEY FEES ON APPEAL?

■ Both parties seek attorney fees on appeal. However neither party provides argument to support their request. In Respondent's brief they state, "If the Respondents prevail in this appeal or a portion of the same, they respectfully request that costs and fees on appeal be awarded pursuant to I.A.R. 40 and I.A.R. 41." No other support or argument is provided. In the Appellants brief, they state, "Appellant believes that pursuant to I.A.R. 35(a)(5) and I.A.R. 41 that to the extent that the Court concludes the foregoing Issues I through 13 in his favor he is therefore entitled to reasonable attorney fees incurred herein."

We have repeatedly held that we will not consider a request for attorney fees on appeal that is not supported by legal authority or argument. *Robbins v. County of Blaine*, 134 Idaho 113, 996 P.2d 813 (2000) (request for award of attorney fees pursuant to Idaho Appellate Rule 41 is not sufficient to raise the issue of attorney fees on appeal); *Meisner v. Potlatch Corp.*, 131 Idaho 258, 954 P.2d 676 (1998) (single conclusory sentence in the "Conclusion" section of the party's brief is not sufficient to raise the issue of attorney fees on appeal); *Petersen v. Franklin County*, 130 Idaho 176, 938 P.2d 1214 (1997) (request for award of attorney fees pursuant to Idaho Appellate Rule 41 is not sufficient to raise the issue of attorney fees on appeal); *Buchin v. Lance*, 128 Idaho 266, 912 P.2d 634 (1995) (request for attorney fees on appeal, without stating the grounds for the request, is not sufficient to raise the issue of attorney fees on appeal).

*Bream v. Benscoter*, 139 Idaho 364, 369, 79 P.3d 723, 728 (2003). Because neither party has supported their request for attorney fees

by argument, we will not consider the issue. *Id.* at 370, 79 P.3d at 729.

## CONCLUSION

We affirm the verdict and judgment entered against Durkin in the amount of $903,637. Costs on appeal, but not attorney fees, are awarded to Respondents.

Chief Justice SCHROEDER and Justices KIDWELL,[2] EISMANN and Justice pro tem SCHILLING concur.