## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 40124

WANDERING TRAILS, LLC, an Idaho limited liability company, and LIQUID REALTY COMPANY, an Idaho corporation,

    Plaintiffs-Counterdefendants-Appellants-Cross Respondents,

v.

BIG BITE EXCAVATION, INC., an Idaho corporation,

    Defendant-Respondent,

and

TIM and JULIE SCHELHORN,

    Defendants-Respondents-Cross Appellants,

and

PIPER RANCH, LLC, an Idaho limited liability company,

    Defendant-Counterclaimant,

and

DOES 1-5,

    Defendants,

and

SCHISM ABLUTION, LLC,

    Intervenor-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2014 Term

2014 Opinion No. 58

Filed: June 18, 2014

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Bradly Ford, District Judge.

The district court's grant of summary judgment is <u>affirmed</u>. The district court's denial of attorney's fees to the Schelhorns is <u>reversed</u>. Attorney's fees and costs on appeal are awarded to defendants.

Angstman, Johnson & Associates, PLLC, Boise, attorneys for appellant. Wyatt B. Johnson argued.

Dinius Law, Nampa, attorneys for respondents. Kevin E. Dinius argued.
_____

W. JONES, Justice

## I. NATURE OF THE CASE

Appellants, Wandering Trails, LLC ("Wandering Trails") and Liquid Realty, Inc. ("Liquid Realty") (collectively the "Plaintiffs"), appeal the district court's entry of summary judgment and denial of their veil-piercing claims against Big Bite Excavation, Inc. ("Big Bite"), Piper Ranch, LLC ("Piper Ranch"), and Tim and Julie Schelhorn in their individual capacity (the "Schelhorns") (collectively the "Defendants"). Big Bite and Piper Ranch are both wholly owned by the Schelhorns. Wandering Trails was created for the purposes of obtaining and developing certain property (the "Wandering Trails development"). Wandering Trails entered into an agreement with Piper Ranch under which Piper Ranch agreed to pave the roadways for the development in exchange for a 25% interest in Wandering Trails. Piper Ranch did not do any work on the development. Wandering Trails and Liquid Realty brought suit and alleged an alter ego claim against Big Bite, Piper Ranch, and the Schelhorns. The district court granted summary judgment to Big Bite and the Schelhorns and refused the Plaintiffs' veil-piercing claims. Wandering Trails and Liquid Realty appeal. The Schelhorns cross-appeal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Wandering Trails is an Idaho company managed by Liquid Realty. Wandering Trails was created for the purposes of obtaining and developing the Wandering Trails property for residential use.

Piper Ranch is an Idaho company formed pursuant to Idaho statutes. The sole members of Piper Ranch are Tim and Julie Schelhorn. Piper Ranch properly filed Articles of Organization and Annual Reports with the Idaho Secretary of State. Piper Ranch's contact information with the Idaho Secretary of State has remained current. The Schelhorns treated Piper Ranch as a pass-

through organization claiming Piper Ranch's income on their own tax returns as permitted by IRS regulations. Piper Ranch has maintained a bank account at Valley Community Credit Union as "Tim Schelhorn, Julie Schelhorn DBA Piper Ranch, LLC." The checks for this bank account only list the name "Piper Ranch, LLC."

Wandering Trails sought bids from various companies for the excavation and paving work required to create the roadways for the development. Thomas Angstman, who was the president and owner of Liquid Realty, expressed interest in obtaining the paving work for the development in exchange for an ownership interest in Wandering Trails. Angstman drafted an Assignment of Limited Liability Company Interest in Wandering Trails to Tim and Julie Schelhorn as individuals. However, the Schelhorns requested that Angstman modify the assignment to substitute their company, Piper Ranch, as the assignee rather than the Schelhorns as individuals. Angstman made the requested corrections and the assignment was executed on behalf of Liquid Realty, Piper Ranch, and Wandering Trails (hereinafter "assignment agreement").[1] The Plaintiffs note that this arrangement is similar to a project known as "Circle Z," in which Piper Ranch got an ownership interest in a project for work performed by Big Bite. During the relevant time in question, the Schelhorns' capital contribution to Piper Ranch was an initial $200 in May of 2009, $2,600 in December of 2008 to cover a payment to Alpha Lending, and $150 in May of 2009 to cover bank charges. The Schelhorns also own Big Bite Excavation, Inc. Big Bite was not engaged in the business of paving streets. The Plaintiffs maintain that the Schelhorns intended to use Big Bite to perform Piper Ranch's obligations under the assignment agreement.

Relying on the assignment agreement, in September of 2008, Wandering Trails informed Alpha Lending that it would not be taking a specific loan draw for the purposes of completing road construction for the Wandering Trails development. Piper Ranch did not perform the excavation work on the Wandering Trails development.

On May 26, 2009, the Plaintiffs filed a complaint against the Defendants for breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, and

---

[1] The assignment agreement provided that Liquid Realty would transfer a 25% ownership interest in Wandering Trails to Piper Ranch; Piper Ranch would perform paving work on the development worth approximately $160,000. Liquid Realty would receive a $60,000 distribution in return for transferring the 25% ownership interest in Wandering Trails. This would result in Piper Ranch having a $100,000 capital account in Wandering Trails.

promissory estoppel. It appears that the Plaintiffs' claims have been assigned to Schism Ablution, LLC.

On October 28, 2009, Big Bite and the Schelhorns filed a complaint against Angstman and Angstman & Associates asserting breach of fiduciary duty and seeking a declaratory action to avoid the assignment agreement, contribution and indemnification, and respondeat superior. These cases were consolidated.

On March 3, 2010, the Plaintiffs sought to amend their complaint to include a veil-piercing claim against Big Bite. The district court denied that motion on July 14, 2010. On July 14, 2010, the Plaintiffs amended their complaint to include veil-piercing claims against Tim and Julie Schelhorn as members of Piper Ranch. The Plaintiffs moved for clarification on July 28, 2010. The district court clarified its order on December 3, 2010, but denied reconsideration. The Schelhorns moved for summary judgment on the claim that they are the alter ego of Piper Ranch on April 1, 2011. The Plaintiffs filed a cross-motion for summary judgment on April 14, 2011. The district court denied both motions on July 13, 2011. Piper Ranch and the Schelhorns filed additional evidence and sought reconsideration on February 23, 2012. The Plaintiffs did not request reconsideration. On May 3, 2012, the district court granted Piper Ranch and the Schelhorns' motion for reconsideration. The district court entered stipulated judgments against Piper Ranch totaling $260,000 on May 22, 2012. The Plaintiffs filed a notice of appeal on June 29, 2012. The Defendants filed a notice of cross-appeal on December 19, 2012.

## III. ISSUES ON APPEAL

1. Whether the district court erred when it dismissed Big Bite from this litigation.
2. Whether the district court erred when it dismissed the Schelhorns from this litigation on the basis that Piper Ranch was not the alter ego of the Schelhorns and that the Plaintiffs could not amend their complaint to include a veil-piercing claim against Big Bite.
3. Whether the district court erred when it found Big Bite a prevailing party and awarded it attorney fees and costs.
4. Whether the district court erred when it found that the Schelhorns were not prevailing parties and denied their request for attorney fees and costs.
5. Whether either party is entitled to attorney fees and costs on appeal and cross-appeal.

## IV. STANDARD OF REVIEW

An appeal from summary judgment is reviewed under the same standard a district court uses when granting a motion for summary judgment. Under Rule

56(c) of the Idaho Rules of Civil Procedure, summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. If the evidence reveals no disputed issues of material fact, then summary judgment should be granted. In making this determination, all disputed facts are liberally construed in favor of the non-moving party. Circumstantial evidence can create a genuine issue of material fact. Inferences that can reasonably be made from the record are made in favor of the non-moving party. However, the non-moving party may not rest on a mere scintilla of evidence. If the record raises neither a question of witness credibility nor requires weighing the evidence, then summary judgment should be granted. The moving party is entitled to judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case.

*ParkWest Homes, LLC v. Barnson*, 154 Idaho 678, 682, 302 P.3d 18, 22 (2013) (internal citations and quotations omitted).

This Court's opinions have been unclear regarding whether veil-piercing claims present a question for the jury or whether they are equitable issues to be tried by the court. In *Vanderford Co. Inc. v. Knudson*, 144 Idaho 547, 165 P.3d 261 (2007), this Court ruled that the district court erred when it failed to give a jury instruction on the issue of alter ego. *Id.* at 557, 165 P.3d at 271. This Court remanded the case for a new trial on the issue of alter ego because "the requested jury instruction[ ] w[as] a correct statement of the law, supported by a reasonable view of the evidence, and not adequately covered by the other instructions." *Id.* But this Court concluded by holding that "[t]he alter ego issue is equitable in nature to be determined by the trial court."

Other decisions by this Court, however, indicate that the issue of alter ego and veil-piercing are properly issues to be considered by the jury. *See VFP VC v. Dakota Co.*, 141 Idaho 326, 335, 109 P.3d 714, 723 (2005) ("We find the district court properly allowed VFP to assert its theory under piercing the corporate veil to the jury."); *Maroun v. Wyreless Sys., Inc.*, 141 Idaho 604, 617, 114 P.3d 974, 987 (2005) (holding that a jury "could find the corporation to be the 'alter ego' of Tucker and TKL but also that the required level of injustice to hold them liable was not present."). There are also a number of cases where a judge has decided the alter ego issue. *See Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc.*, 95 Idaho 599, 514 P.2d 594 (1988) (upholding the district court's veil-piercing decision where "[t]he parties entered into a comprehensive stipulation of facts, and the case was submitted to the trial court upon that stipulation."); *Hutchinson v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App.

1997) (holding that the district court's order piercing the corporate veil was supported by substantial and competent evidence).

To clarify, we hold that issues of alter ego and veil-piercing claims are equitable questions. *See* 51 Am. Jur. 2d, *Limited Liability Companies*, § 20; 18 Am. Jur. 2d, *Corporations*, § 47. In these cases, the trial court is responsible for determining factual issues that exist with respect to this equitable remedy and for fashioning the equitable remedy. However, the district court has the discretion to empanel an advisory jury. Even if the district court empanels an advisory jury, it is required to either accept or reject the advisory jury's findings of fact when making its own findings of fact. In the event a district court accepts the advisory jury's findings of fact, the district court must incorporate those findings into its own findings of fact. Though a court is permitted to empanel an advisory jury, it is never required to do so.

## V. ANALYSIS

### A. The district court did not err when it dismissed Big Bite from this litigation.

On July 14, 2010, the district court dismissed the Plaintiffs' claims against Big Bite. The district court noted that the parties conceded that Piper Ranch and Big Bite never entered into a written agreement that would require Big Bite to perform the work that Piper Ranch agreed to perform in the assignment agreement. The district court noted that while there is a possibility that Big Bite and Piper Ranch discussed performing the work, there is no evidence demonstrating such a conversation, there is no indication in the assignment agreement that Piper Ranch intended to contract with Big Bite, and any evidence about the relationship between Piper Ranch and Big Bite is parol evidence. The district court also ruled that Wandering Trails was not the third party beneficiary of a contract between Piper Ranch and Big Bite. The district court ruled that Big Bite was not a party to the assignment agreement, and that there was no evidence in the record to support the Plaintiffs' claim that there was a contract between Piper Ranch and Big Bite to perform the paving of the roads for the Wandering Trails development, much less was there any evidence that Wandering Trails was a third party beneficiary. Finally, the district court refused to consider Wandering Trail's claim for promissory estoppel because this case did not involve failure of consideration.

Plaintiffs argue that the district court erred when it granted Big Bite's motion for summary judgment because there was a contract between Piper Ranch and Big Bite providing that Big Bite would perform the excavation and pavement work for the Wandering Trails

development. Plaintiffs contend that because the work to be performed was substantially similar to the work that Big Bite performed on the Circle Z project, that the Plaintiffs were the express beneficiary of the agreement between Big Bite and Piper Ranch. Though raised as an issue on appeal, the Plaintiffs do not discuss how the district court's order regarding promissory estoppel was in error.

Defendants argue that the district court properly granted Big Bite summary judgment because the Plaintiffs failed to raise any material fact with respect to an alleged contract between Piper Ranch and Big Bite. Defendants contend that the evidence is undisputed that there was no written contract in this case, and even if the assertions advanced by the Plaintiffs were true, it does not amount to an implied contact because the terms of the contract are not certain. Finally the Defendants argue that Wandering Trails was not a third party beneficiary of an agreement between Big Bite and Piper Ranch because there was no agreement, and even if there were an agreement, Big Bite was merely intended to be a subcontractor, and there was no evidence that the agreement was made expressly for the benefit of Wandering Trails.

1.      *There is not an implied contract.*

It is undisputed that there is no written contract between Big Bite and Piper Ranch obligating Big Bite to perform the obligations incurred by Piper Ranch in the assignment of interest agreement between Piper Ranch and Wandering Trails. Therefore, any contractual arrangement between Big Bite and Piper Ranch must be an implied or oral contract. *See Cont. Forest Prod. Inc. v. Chandler Supply Co.*, 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974).

An implied contract occurs where "there is no express agreement but the conduct of the parties implied an agreement from which an obligation in contract exists." *Id.* For a contract to exist, a distinct understanding that is common to both parties is necessary. *Mitchell v. Siqueiros*, 99 Idaho 396, 400, 582 P.2d 1074, 1078 (1978). An enforceable contract must be complete, definite, and certain in all of the contract's material terms. *P.O Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 238, 159 P.3d 870, 875 (2007).

Here, Wandering Trails has failed to demonstrate any oral agreement between Big Bite and Piper Ranch. The only evidence raised to support Plaintiffs' contentions that there was an oral contract between Big Bite and Piper Ranch was a statement made by Angstman wherein he alleges that the Schelhorns stated that Big Bite would perform the work contemplated in the assignment agreement. This does not amount to an oral contract between Big Bite and Piper

Ranch because it was a statement made by Schelhorn acting for Piper Ranch in a contract negotiation between Piper Ranch and Wandering Trails. Even though the Schelhorns are the owners of both Big Bite and Piper Ranch, this statement alone is insufficient with regard to *any* of the terms of the alleged contract.

Next, there is not an implied contract because there is no indication that the parties conducted themselves in any way as though there was a contract. The Schelhorns and Piper Ranch did not conduct themselves as if there was a contract between Big Bite and Piper Ranch when entering the assignment agreement because Big Bite is not mentioned in the assignment agreement. Also, the evidence demonstrates that Big Bite does not have the equipment needed to perform paving work: it would not be possible for Big Bite to do the paving work. The relevance of the Circle Z project to this issue is unclear. That project was not a part of the Wandering Trails development.

Additionally, Wandering Trails could have protected itself from contracting with what it asserts is a sham entity. Wandering Trails was aware that it was interacting with an entity that possessed characteristics of limited liability. To protect its interests, it could have requested the financials of Piper Ranch. It could have sought personal guarantees from the Schelhorns. It could have requested Big Bite enter into a contract with Piper Ranch to perform the paving work. It could have requested a contract with Big Bite itself. The Plaintiffs could have contracted around these various contingencies. They did not.

Thus, there was no express, oral, or implied contract between Piper Ranch and Big Bite. Additionally, since there is no contract between Big Bite and Piper Ranch, Wandering Trails cannot be a third party beneficiary of that non-existent agreement. The district court's grant of summary judgment to Big Bite is affirmed.

**B.** **The district court did not err when it dismissed the Schelhorns from this litigation.**

*1.* *Piper Ranch is not the alter ego of the Schelhorns.*

The Schelhorns filed a motion for summary judgment on April 1, 2011. On July 13, 2011, the district court denied the Schelhorns' motion for summary judgment. On February 23, 2012, the Schelhorns requested reconsideration of the district court's order denying them summary judgment pursuant to I.R.C.P. 11(a)(2)(B). After reconsidering its denial of summary judgment, the district court granted the Schelhorns summary judgment. The district court ruled that though the Schelhorns are the sole owners of both Piper Ranch and Big Bite, and though

they exercise complete control over both companies, such arrangements are permissible by Idaho statute; however, the district court noted that the Schelhorns took sufficient action including operating a separate bank account for Piper Ranch and expressly clarifying that it would be Piper Ranch and not the Schelhorns who should be named on the assignment agreement. The district court found these facts do not contradict the unity of interest requirement. The district court found that there was economic separateness because Piper Ranch filed their tax returns in a manner acceptable to the IRS and kept separate accounts. The district court finally held that it did not need to consider whether its order would give rise to an inequitable result because the Plaintiffs failed to demonstrate a unity of interest. Regardless, the district court noted that Piper Ranch's assets include the 25% interest in Wandering Trails, which it relied on to demonstrate that even if there was a unity of interest the Plaintiffs failed to show that Piper Ranch was undercapitalized to the point of making it inequitable to fail to pierce the veil of Piper Ranch.

The Plaintiffs argue the district court erred in dismissing their veil-piercing claim against the Schelhorns. The Plaintiffs argue that entry of judgment against the Schelhorns is proper because Piper Ranch is controlled exclusively by the Schelhorns. The Plaintiffs argue that they have demonstrated that Piper Ranch is undercapitalized and was therefore being used merely as a conduit through which the Schelhorns could funnel work to their other LLC: Big Bite. Plaintiffs contend that Big Bite had the capability of performing Piper Ranch's obligations under the assignment agreement. The Plaintiffs also rely heavily on another transaction involving a similar situation where Piper Ranch allegedly acted as a mere conduit for the Schelhorns to funnel work to Big Bite. This was the Circle Z project.[2] Finally, the Plaintiffs argue that Piper Ranch was so undercapitalized that not permitting them to recover against the Schelhorns would result in injustice because Piper Ranch has effectively no capital but incurred obligations of $160,000.

The Defendants argue that the district court properly granted the Schelhorns summary judgment because limited liability companies are less formal than corporations, are entitled to be owned and controlled by individuals, and are permitted to be taxed as disregarded entities. The

---

[2] The district court had the following to say about the facts surrounding the Circle Z project:

> The only evidence that might relate to [the argument that Piper Ranch improperly engaged in business transactions with other entities] is the reference to work performed by Big Bite [ ] on the Circle Z development for which Piper Ranch [ ] was to be provided an interest in the project. There is essentially no other relevant evidence on this project. There is no contract related to this transaction provided to the court. There is no evidence that Piper Ranch [ ] entered into an agreement, obtained an interest in the project, incurred any debt related to the project[,] or paid any expenses related to this project.

Defendants argue that Piper Ranch maintained economic separateness because it had its own bank account and there is only one instance of Piper Ranch paying a debt of Big Bite, which was corrected after raised. Finally, the Defendants argue that there is no evidence that Piper Ranch is undercapitalized because it had the 25% interest in Wandering Trails as an asset and there is no evidence that an inequitable result would occur because Piper Ranch made no affirmations or statements at all regarding its financial status.

Pursuant to Idaho law, a limited liability company is a legal entity "distinct from its members." I.C. § 30-6-104(1). Members of an LLC are not liable for the misconduct of the company unless it is proven that the company is the alter ego of the member. I.C. § 30-6-304(1); *Sirius LC v. Erickson*, 150 Idaho 80, 85, 244 P.3d 224, 229 (2010). This is the equivalent of piercing the corporate veil for a limited liability company. *Id.* Piercing the corporate veil imposes personal liability on otherwise protected corporate officers, directors, and shareholders for a company's wrongful acts allowing the finder of fact to ignore the corporate form. *VFP VC v. Dakota Co.*, 141 Idaho 326, 335, 109 P.3d 714, 723 (2005).

> To prove that a company is the alter ego of a member of the company, a claimant must demonstrate "(1) a unity of interest and ownership to a degree that the separate personalities of the [company] and individual no longer exist and (2) if the acts are treated as acts of the [company] an inequitable result would follow."

*Id.*; *Vanderford Co. v. Knudson*, 144 Idaho 547, 556–57, 165 P.3d 261, 270–71 (2007).

### a. There is not a unity of interest.

Under the theory of piercing the corporate veil, factors to consider include the level of control that the shareholder exercises over the corporation, the lack of corporate formalities, the failure to operate corporations separately, keeping separate books, and the decision-making process of the entity. *See Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc.*, 95 Idaho 599, 602, 514 P.2d 594, 597 (1973). However, Idaho's limited liability act specifically provides that "[t]he failure of a limited liability company to observe any particular formalities relating to the exercise of its powers or management of its activities is not a ground for imposing liability on the members or managers for the debts, obligations or other liabilities of the company." I.C. § 30-6-304(2). The question, therefore, becomes whether there is sufficient evidence "such that there was no distinction between the personalities of" the Schelhorns and Piper Ranch. *Hutchinson v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997). The validity of this Court's

holdings in *Surety Life* are questionable when applied to an LLC formed under Idaho's Limited Liability Company Act, I.C. §§ 30-6-101 *et seq*.

The Plaintiffs did not raise a genuine issue of material fact evidencing unity of interest among the Schelhorns and Piper Ranch. First, the Plaintiffs argue that there is a unity of interest because the only members of Piper Ranch are the Schelhorns and the Schelhorns exercise full control over Piper Ranch. It is true that this is a relevant inquiry for piercing the corporate veil; however, that is not a relevant inquiry for demonstrating that Piper Ranch as a limited liability company is the alter ego of the Schelhorns. Such an analysis would be contrary to an express Idaho statute that permits individual LLCs and member-managed LLCs. *See* I.C. § 30-6-304. Additionally, an Idaho statute expressly states that LLCs are entities "distinct from its members." I.C. § 30-6-104(1). The Plaintiffs' argument, if accepted, would effectively eviscerate the legislative intent that member-managed and individual LLCs are separate legal entities.

The Plaintiffs argue that Piper Ranch did not follow adequate formalities because Piper Ranch's bank account was not formal enough, decisions regarding how it was to fulfill its obligations to pave the Wandering Trails development were not made by resolution, and Piper Ranch was capitalized by capital calls. These factors do not demonstrate a unity of interest among the Schelhorns and Piper Ranch. Idaho law provides that the lack of such corporate formalities shall not be fatal to the status of a limited liability company. I.C. § 30-6-304(2). Thus, there is no requirement that Piper Ranch make its business decisions by resolution or that it be capitalized in a manner other than capital calls.

On the other hand, the evidence before the district court did in fact demonstrate a distinction between the personalities of the Schelhorns and Piper Ranch. Though the Schelhorns were included on the name of Piper Ranch's bank account, the account included the name of Piper Ranch, the account had checks in *only* Piper Ranch's name, there is no evidence that the Schelhorns deposited any of their own money into the account other than to meet capital obligations, and there is no evidence the Schelhorns used the money to pay their own obligations. Additionally, the Schelhorns clearly asserted separate personalities when they informed Wandering Trails that they wanted the assignment agreement to be between Wandering Trails and Piper Ranch—not the Schelhorns as individuals.

The Schelhorns issued a check to Angstman for legal services he performed on behalf of Big Bite from the Piper Ranch account. The Plaintiffs rely heavily on this check, which

Angstman obtained from his prior representation of the Defendants, as evidence of the unity of interests among the Schelhorns, Piper Ranch, and Big Bite. After this check was raised by the Plaintiffs, the Defendants caused Big Bite to reimburse this expense to Piper Ranch. This transaction amounts to nothing more than a scintilla of evidence demonstrating a unity of interest. The check was issued by Piper Ranch for legal services Angstman provided to Big Bite. Angstman and/or his law firm have represented every party to this lawsuit. The Schelhorns' argument that this transaction was a mistake is reasonable given Angstman's extensive representation of the Schelhorns, Piper Ranch, and Big Bite. It is certainly reasonable that this was an oversight on the part of the Schelhorns. At most this mistake only amounts to a scintilla of evidence.

Therefore, the Plaintiffs failed to raise a genuine issue of material fact demonstrating the unity of interest among the Schelhorns and Piper Ranch. Consequently, their alter-ego claim must fail.

*2.* *A veil-piercing claim against Big Bite is improper.*

On March 3, 2010, the Plaintiffs sought leave to file an amended complaint to include a veil-piercing claim against the Schelhorns as the principal owners of Big Bite and Piper Ranch. On July 14, 2010, the district court granted the Plaintiff's request to amend their complaint to include a veil-piercing claim against Piper Ranch but denied it with respect to Big Bite. The district court denied the veil-piercing claim against Big Bite because the district court had already granted Big Bite summary judgment on all of the Plaintiffs' claims; thus, whether the Plaintiffs' veil-piercing claim should be allowed is a moot issue. The Plaintiffs sought clarification of that order on July 28, 2010. On December 3, 2010, the district court clarified its order. The district court ruled that a veil-piercing claim against Big Bite would be inappropriate because Big Bite was not a party to the assignment agreement. Additionally, the district court ruled that there was no evidence to support a veil-piercing claim against Big Bite because Big Bite and Piper Ranch are not members, managers, or shareholders, of one another. The district court ruled that there was no evidence that Big Bite was behind the veil of Piper Ranch—only the Schelhorns against whom it permitted a veil-piercing claim.

The Plaintiffs argue that the district court erred when it denied their motion to amend their complaint to seek a veil-piercing claim against Big Bite because Big Bite held an equitable ownership interest in Piper Ranch through the Circle Z project.

The Defendants argue that the district court properly denied the Plaintiffs' motion to amend their complaint because, despite contentions to the contrary, discovery and depositions of the Schelhorns, Piper Ranch, and Big Bite had already been conducted, and there was no evidence that Big Bite was in any way obligated under the assignment agreement and no demonstration of any type of ownership interest in Piper Ranch by Big Bite.

A court's decision to grant or deny a motion to amend is reviewed under the abuse of discretion standard. *Baxter v. Craney*, 135 Idaho 166, 16 P.3d 263 (2000). A court does not abuse its discretion where it (1) correctly perceives the issue as one of discretion; (2) acts within the outer boundaries of its discretion and consistently with the legal standard applicable to the specific choices available to it; and (3) reaches its decision by an exercise of reason. *Sun Valley Shopping Ctr. v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Idaho statutes provide for veil-piercing of a limited liability entity to get beyond the liability limits of the LLC to the individual(s) behind the entity. *See* I.C. § 30-6-304(2). The factors considered for veil-piercing claims generally revolve around shareholders, members, or owners of a business entity exploiting the company without regard to its legal separateness. *See Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc.*, 95 Idaho 599, 603, 514 P.2d 594, 598 (1973).

It is not required that there be evidence in the record supporting a motion to amend before a motion to amend may be granted. Nonetheless, the district court did not abuse its discretion when it denied the Plaintiffs' motion to amend because the motion was made late in the course of litigation. The motion to amend was made after discovery and after the facts in the case were developed and resolved. The district court was entitled to exercise its discretion in denying this motion to amend that was unsupported by the evidence. There was no evidence supporting the contention that Big Bite was an entity that stood behind the Piper Ranch entity. Indeed all of the evidence demonstrates that it was the Schelhorns who exercised complete control and ownership of Piper Ranch. There is nothing showing that Big Bite was a member of Piper Ranch, was an owner of Piper Ranch, or had any equitable interest in Piper Ranch. The Plaintiffs refer to the mysterious Circle Z project as demonstrating that Big Bite had an equitable ownership in Piper Ranch, but the district court ruled that there was no evidence about the Circle Z project other than unsubstantiated assertions. *See supra* at 9 n.2.[3] Also, the Plaintiffs seem to argue that they

_____

[3] The Plaintiffs allege that Big Bite was an equitable owner of Piper Ranch because "Big Bite did 'utilities' work for Circle Z Development Group in exchange for a 33% LLC membership interest that was given to Piper Ranch."

should be able to go after Big Bite because the Shelhorns own Big Bite as well. Effectively, the Plaintiffs argue that the Schelhorns are the alter ego of Big Bite and that Big Bite stands behind the veil of the Schelhorns. There is no veil to pierce in such a scenario. The Schelhorns as individuals have no legal status to disregard. The Plaintiffs' gripes against Big Bite relate to the Schelhorns. The Schelhorns were pursued with a veil-piercing claim. There is nothing providing that individuals can be the alter ego of a business entity, as Plaintiffs essentially contend. Finally, the district court had dismissed all of Plaintiff's direct claims against Big Bite. Therefore the veil-piercing claims on those issues were moot. Thus, the district court did not abuse its discretion when it denied the Plaintiffs' motion to amend their complaint to seek a veil-piercing claim against Big Bite.

**C.**    **The district court did not err when it found Big Bite the prevailing party and awarded it attorney fees and costs.**

The district court found that Big Bite was the prevailing party in this action and awarded it attorney fees and costs against the Plaintiffs in the amount of $8,039. The Plaintiffs argue that "[t]o the extent the trial court is reversed, Big Bite can no longer be considered a 'prevailing party,' and thus, the award of costs and attorneys' fees should be vacated . . . ." Respondents argue that the district court's decision with regard to Big Bite should be upheld and thus attorney fees are proper.

The only ground on which the Plaintiffs seek to overturn the district court's award of attorney fees is if the district court erred in granting summary judgment to Big Bite and erred in denying the Plaintiffs' motion to amend their complaint against Big Bite. In such an instance, the Plaintiffs contend Big Bite would no longer be a prevailing party. Since the district court's decision on both of these issues is affirmed, the district court's entry of attorney fees and costs against Big Bite is also affirmed.

**D.**    **The district court erred when it found that the Schelhorns were not prevailing parties when it denied their request for attorney fees and costs.**

On May 22, 2012, the Schelhorns, after being dismissed from this action, filed a motion for attorney fees and costs pursuant to I.R.C.P. 54(d), I.R.C.P. 54(e), I.C. § 12-120, and I.C. § 12-121. The district court denied the Schelhorns' request for attorney fees because the

---

However, the transcript references make clear that the LLC interest given was in Circle Z not in Piper Ranch. It appears that Big Bite was never paid for its work on Circle Z by Piper Ranch. But again, as the district court noted, there is no evidence as to what compensation was due. Additionally, the Plaintiffs cite no authority for their contention that not being paid for a project gave Big Bite an equitable ownership interest in Piper Ranch.

Schelhorns were not a prevailing party. The district court ruled that the Schelhorns cannot be determined to be prevailing parties in this litigation because this was a highly contested case with multiple parties, numerous claims, and numerous defenses. The district court ruled that none of the parties, except Big Bite, prevailed on a multitude of their claims. The district court also noted that the Schelhorns were requesting attorney fees and costs for all of this action.

The Schelhorns cross-appeal the district court's denial of their request for attorney fees and costs. The Schelhorns argue that the district court abused its discretion because the Schelhorns argue that they prevailed on the only claim involving them: the Plaintiffs' veil-piercing claim. The Schelhorns argue that they did not file a counterclaim against the Plaintiffs. They also argue that the district court erroneously considered the Schelhorns and Piper Ranch as one and the same when denying their request.

The Plaintiffs argue that the Schelhorns have failed to demonstrate that the district court abused its discretion when it denied their request for attorney fees. Also, the Plaintiffs argue that the Schelhorns mischaracterized the record because though there was no counter-claim, the Schelhorns did in fact file a complaint that was consolidated into this case.

In determining whether a party is a prevailing party, the court shall consider "the final judgment or result of the action in relation to the relief sought by the respective parties." I.R.C.P. 54(d)(1)(B). Whether a party is the prevailing party is committed to the discretion of the district court. *Jorgensen v. Coppedge*, 148 Idaho 536, 538 224 P.3d 1125, 1127 (2010). Where a case involves multiple claims, the district court must determine who prevailed in the action as a whole, not on a claim-by-claim basis. *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving Inc.*, 141 Idaho 716, 719, 117 P.3d 130, 133 (2005). Where both parties are partially successful, a court in its discretion may choose not to award attorney fees to either party. *Id.*

The district court abused its discretion when it denied the Schelhorns' request for attorney fees and costs. The only action against the Schelhorns by the Plaintiffs was to pierce the corporate veil, and the Schelhorns prevailed on that issue. Thus, the Schelhorns are entitled to attorney fees below.

**E.      The Defendants are entitled to attorney fees and costs on appeal.**

The Plaintiffs request attorney fees on appeal and cross-appeal pursuant to I.C. § 12-120(3), I.C. § 12-121, I.A.R. 11, I.A.R. 41, and I.A.R. 40. The Plaintiffs argue that the Defendants' cross-appeal was frivolous and brought without adequate foundation. The

Defendants request attorney fees on appeal and cross-appeal pursuant to I.C. § 12-120(3) and I.A.R. 41.

Idaho Code Section 12-120(3) provides for attorney fees to the prevailing party in a civil action to recover on "any commercial transaction." Commercial transactions are all transactions except for personal or household purposes. I.C. § 12-120(3). There is no dispute that this appeal and cross-appeal involve a commercial transaction. The Defendants prevailed on both the appeal and cross-appeal. Defendants are therefore entitled to attorney fees and costs.

## VI. CONCLUSION

The district court's grant of summary judgment is affirmed. The district court's denial of the Schelhorns' request for attorney fees below is reversed. The defendants are entitled to attorney fees and costs on appeal.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON, CONCUR.