# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50339

JEREMY E. LITSTER, individually,

   Plaintiff-Appellant-
Cross Respondent,

v.

LITSTER FROST INJURY LAWYERS
PLLC; and MARTHA LARELL FROST aka
LAURA LITSTER FROST,

   Defendants-Respondents-
Cross Appellants.

_____

JOSEPH D. LITSTER, individually; SARAH
LITSTER KING, individually; and RYAN
LITSTER, individually,

   Plaintiffs-Appellants-
Cross Respondents,

v.

LITSTER FROST INJURY LAWYERS
PLLC; and MARTHA LARELL FROST aka
LAURA LITSTER FROST,

   Defendants-Respondents-
Cross Appellants.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Boise, August 2024 Term**

**Opinion Filed: November 29, 2024**

**Melanie Gagnepain, Clerk**

Appeal from the District Court of the Fourth Judicial District of the State of Idaho,
Ada County, Michael Reardon, District Judge.

The judgment of the district court is <u>vacated</u>, summary judgment is <u>reversed in part</u>
and <u>affirmed in part</u>, denial of attorney fees is <u>reversed</u>, and remanded.

Attorneys of Idaho, Boise, for Appellant. J.W. Bond argued.

McFarland Ridder Law, PLLC, Meridian, for Respondents. Ryan T. McFarland
argued.

_____

BRODY, Justice.

This appeal and cross-appeal concern the enforceability and severability of an employment agreement, unpaid wages, and a denial of a request for attorney fees. Four former employees ("Employees") of Litster Frost Injury Lawyers ("LFIL") filed suit against LFIL and its former sole shareholder Martha Frost, also known as Laurie Frost, (collectively "Litster Frost") for unpaid wages and breach of an employment agreement, alleging that LFIL owes them compensation in the form of wages, bonuses, profit sharing, and other expenses incurred while employed at LFIL.

The district court granted summary judgment in Litster Frost's favor on two bases. First, the district court concluded that Employees' claims for unpaid wages and unreimbursed expenses were time barred by the one-year statute of limitations set forth in Idaho Code section 45-614, part of the Idaho Wage Claim Act. Second, the district court concluded that the written "Term Sheet" advanced by Employees as an employment contract was an unenforceable and nonseverable "agreement to agree." Employees subsequently filed a motion for reconsideration which the district court denied.

Employees appeal, arguing the district court erred by determining that the provisions of the Term Sheet were not severable or enforceable based on the lack of a definitive time frame for performance and that the district court should have supplied a "reasonable time" for performance term. Litster Frost cross-appealed and argued the district court erred in denying their request for attorney fees following summary judgment. For the reasons set forth below, we vacate the judgment and reverse the district court's decision granting summary judgment on Sarah Litster King's claim for reimbursement of Spartan Race expenses but affirm the district court's grant of summary judgment in all other respects. We reverse the district court's denial of attorney fees. We remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Prior to 2008, attorney William J. Litster ("Bill") operated the Law Offices of William J. Litster P.A., dba "Litster Injury Lawyers." Bill's law firm employed numerous non-lawyer members of the Litster family, including (1) Jeremy, who was the Director of Operations for the firm; (2) Joe, who worked as a legal assistant on insurance claims; (3) Sarah, who was employed by Bill as a runner and janitor; and (4) Ryan, who was employed as a runner, janitor, and assistant to Jeremy. In March of 2008, Bill asked attorney Martha Larell Frost, AKA Laura Litster Frost

2

("Laurie"), his sister, to move to Boise to work for his firm, which she agreed to do. Sometime in 2008, Bill disclosed to Laurie that his law license was being suspended and requested that she take over the firm. Thereafter, Laurie founded LFIL and hired most of the staff from Bill's firm.

On June 2, 2009, LFIL hired Jeremy as its Director of Operations. A month later, on July 1, 2009, LFIL hired Sarah, Joe, and Ryan. Sarah was hired as a part-time employee with janitorial and other duties, but later transitioned to full-time employment as an assistant office manager. Joe was hired as an at-will independent contractor, whose job duties included communicating with insurance companies as a legal assistant. Ryan was hired to assist with bookkeeping and marketing and later became a full-time assistant bookkeeper to Jeremy Litster. Each employee worked at LFIL in their various capacities until December 13, 2018.

Over time, Laurie's and Jeremy's relationship deteriorated and there were "constant disputes about office management and financial accountability." Other family member employees were pulled into these disputes. Laurie claims that she eventually came to view Jeremy's job performance as "substandard," that he "failed to institute basic business control and reporting and accountability measures" and was often abusive to employees and to Laurie. Laurie alleged that "[t]hese issues became more pronounced over the years, especially after [Jeremy] began law school in 2017 . . . ."

On December 13, 2018, Litster Frost terminated Employees. Litster Frost provided Jeremy with a Release and Separation Agreement offering $75,000.00 to release LFIL from any liability related to his termination. Following their termination, Laurie claims that Employees "began retaliating in ways that threatened to destroy LFIL[,]" such as encouraging other employees to resign and contacting medical providers who treated LFIL clients and reporting "that LFIL was imploding." LFIL's attorney employees told Laurie "they were at risk of malpractice without staff support and recommended that [she] re-employ Jeremy, Joe, Sarah, and Ryan. According to Jeremy, LFIL "began to delve into chaos and the majority of the firm's [thirty-five] employees began looking for other employment."

Three days later, Laurie began negotiations to re-hire Employees, and, on December 31, 2018, Laurie and Jeremy executed a four-page document entitled "Term Sheet." The Term Sheet consisted of thirty-two paragraphs, which largely addressed three main subjects: (1) terms of reemployment, such as Employees' compensation, benefits, and responsibilities; (2) terms for granting Jeremy "an exclusive right of refusal to purchase" LFIL after he passed "the bar exam";

3

and (3) terms for firm management and dispute resolution. The Term Sheet's provisions pertaining to Employees' reemployment and Jeremy's option to purchase LFIL are at the heart of this dispute and provide in relevant part:

1. Laurie Litster Frost and Jeremy Litster are working together to determine how to share net profits of the firm as determined by a third-party auditor each reporting period wherein the accounts are finalized, 50% to Laurie and 50% to Jeremy. Jeremy and Laurie will agree on the reporting periods, draws and other compensation. This is prospective. This will be done in a way that is IRS and IRCP [sic] compliant.

. . .

7. Laurie Litster Frost will give Jeremy Litster an exclusive right of refusal to purchase the firm after Jeremy Litster passes the bar exam. Such offer shall remain open until three months after the results of the bar examination are released and can be exercised at any time during the three month window by Jeremy. This offer shall be renewable for a period of six months should Jeremy Litster be unsuccessful in passing the bar exam at his first sitting. Valuation of the firm shall begin no later than June 1, 2019.

8. Jeremy Litster, Joe Litster, Sarah Litster, Ryan Litster shall return as full-time employees of the firm. They shall not be terminated during the time outlined in paragraph 7 of this agreement (the outline of time in which Jeremy Litster shall sit for and pass the bar examination), and shall not be terminated, except for cause, such cause to be determined by both Laurie Litster Frost and Jeremy Litster; or, if they cannot agree, by majority vote of the committee outlined above. Everyone comes back at their same roles and same compensation. . . .

. . .

10. Laurie Litster Frost and Jeremy Litster shall work together to resolve the issues outlined by both parties in a timely fashion. This means that both parties will work together, as co-managers, to agree to resolve issues before January 31, 2019 or promptly after the completion of the audit. During these discussions, neither party shall engage in bullying, yelling, threatening or conduct that is unprofessional or undermines the firm or other party.

. . .

23. Joe's monthly bonuses will be defined clearly and will be paid monthly and agreed upon by the parties. A discussion will be agreed upon by all parties regarding past bonuses.

24. All other compensation packages in place on 12/13/2018 will be continued and paid as if there was not a termination. This contemplates cars, student loans and therapy.

Things to be determined by Jan 31, 2019

. . .

29. Agreement to have a meaningful discussion of buyout and come to terms. Parameters of buyout will be defined by January 31, 2019. This means that Laurie will candidly discuss her objectives and expectations of a buyout. This discussion will include Jeremy's participation as a "quasi" partner over the past 15 years and discuss what Laurie's plans are if she were incapacitated or were to pass away before Jeremy is admitted to the bar . . . . This conversation will include the discussion of Bill's contribution to his firm from 1992-2008 and his contribution to Litster Frost from 2008 to the present.

30. A discussion of what happens when Bill gets his license back and how this affects the timing and option of the first right of refusal referred to in #7 above.

Jeremy and Laurie signed the Term Sheet, and James Dorman, Dave Litster, and Tony Litster signed as witnesses. Thereafter, Employees returned to work at LFIL in various capacities. Nothing in the record indicates that Laurie and Jeremy met on January 31, 2019, to resolve any of the outstanding issues identified in the Term Sheet.

According to Laurie, "[t]he efforts to reconcile failed relatively quickly." On July 11, 2019, Laurie sent an email to Employees, among others, which announced that LFIL would not be expensing an upcoming trip to Lake Powell that she had not approved. In response, Jeremy emailed Laurie that "he will be taking [his] full 50% of the profits bonus" to pay for the trip. Laurie replied that Jeremy was not entitled to any profits and that the use of the firm's funds would "constitute embezzlement." Following a heated email exchange, Jeremy told Laurie, "I quit[,]" and sent a second email clarifying that he would "tie things up by the end of the month." *Id*. Several days later, on July 15, 2019, Jeremy sent Laurie an email to rescind his resignation, stating: "I am not quitting. Sorry for saying that. I will pay for Lake Powel [sic] out of my own pocket. I sincerely apologize if my email caused you any stress. I will pay for the Powel [sic] trip from my personal fund."

The next day, July 16, 2019, Laurie sent Jeremy an email advising him that she considered him to have quit on July 11, 2019, and that his services were no longer needed:

Regarding your employment status with my firm, I note that you emailed me on Thursday July 11, 2019[,] that you quit. I have undertaken actions based on your quitting. I am not hiring you back. Your services are no longer required effective immediately (i.e., there is no need for you to work until August 1 as you suggested. Nevertheless, I will pay you to the end of the month.) I wish you luck in your future endeavors.

5

Thereafter, LFIL terminated Joe, Sarah, and Ryan without cause on September 16, 2019.

Following his termination, Jeremy applied for unemployment. After the Department of Labor initially deemed him ineligible for benefits, Jeremy appealed and the Idaho Industrial Commission deemed him eligible for benefits, concluding, among other things, that Jeremy "did not voluntarily quit"; rather, Laurie effectively discharged Jeremy "when she refused to accept [his] rescission of his notice" without explanation. On May 14, 2021, Jeremy received notice that he had passed the Uniform Bar Examination which was administered in Arizona.

## B. Relevant Procedural History

Employees filed suit against Litster Frost in two separate cases that were subsequently consolidated. Jeremy filed suit on July 16, 2021, and Joe, Sarah, and Ryan filed suit about two months later, on September 15, 2021. Their complaints alleged various claims against Litster Frost. First, Employees each alleged claims for unpaid wages and breach of contract. Relevant to their breach of contract claims, Employees alleged that they "expected to remain continuously employed by [Litster Frost] until March, 2021[,]" and that Laurie violated the Term Sheet by firing them without good cause during the time outlined in paragraph 7 of the Term Sheet and by failing to tender unpaid wages and "other unpaid compensation." Second, Jeremy and Sarah alleged that Laurie breached agreements to reimburse them for certain business expenses they personally incurred on behalf of LFIL (hereafter "reimbursement claims"). Lastly, Joe and Sarah alleged claims for "Unpaid Referral Bonus[es]" (hereinafter "referral bonus claims"). Relevant to those claims, Joe and Sarah alleged that Laurie promised each of them one-third of the attorney fees collected on cases that they referred to LFIL, but Laurie never followed through on this promise.

Litster Frost filed a motion for summary judgment, arguing that the one-year statute of limitations set forth in Idaho Code section 45-614 barred each of their claims because Employees sought "additional" wages and bonuses. Idaho Code section 45-614 sets forth a two-year statute of limitations for claims to collect "wages, penalties and liquidated damages[,]" and a one-year statute of limitations for claims to collect "additional salary, wages, penalties or liquidated damages, because of work done or services performed during his employment for the pay period covered by said payment . . . ." Litster Frost also argued it was entitled to judgment as a matter of law on Employees' breach of contract claims because the Term Sheet (1) was merely an agreement to agree with unenforceable terms that could not be severed from the remaining document to render an enforceable contract, and (2) violated public policy because Jeremy was not a licensed attorney

and, therefore, LFIL's profits could not be split with him and the firm could not be sold to him under the Idaho Rules of Professional Conduct governing attorneys.

Employees opposed Litster Frost's motion on three grounds relevant to this appeal. First, Employees argued that their claims were not subject to section 45-614's one-year statute of limitations because they did not assert a claim for "additional" wages; rather, Employees argued that their claims sought "unpaid" wages and bonuses, which were subject to the two-year statute of limitations set forth in Idaho Code section 45-614. Second, Employees argued that section 45-614 did not apply to Jeremy's and Sarah's claims for unreimbursed expenses because the claims did not relate to past work performed and instead were subject to either the five-year statute of limitations applicable to written agreements (Idaho Code section 5-216) or four-year statute of limitations for verbal agreements (Idaho Code section 5–217). Third, Employees argued that the essential terms within the Term Sheet—such as Employees' compensation and the promise not to terminate Employees without cause—were enforceable because Jeremy and Laurie agreed on these terms and extrinsic evidence established the parties' intent to include severable terms. Employees also filed declarations from Jeremy, Joe, Ryan, and Sarah in support of their opposition to Litster Frost's motion. In Sarah's declaration, she claimed that LFIL agreed to reimburse her for expenses she incurred for participating in Spartan races in February and May of 2019—expenses she claims Jeremy approved when he was LFIL's Director of Operations.

The district court held a hearing on the matter, and subsequently issued an order granting Litster Frost's motion for summary judgment. First, the district court concluded that Employee's wage claims and reimbursement claims were subject to section 45-614's one-year statute of limitations and were therefore time-barred because their claims were filed approximately a year after their respective deadlines. Next, the district court concluded that Litster Frost was entitled to judgment as a matter of law on Employees' breach of contract claims because paragraphs 8, 23, and 24—which consisted of Employees' employment terms—were unenforceable and nonseverable. The district court explained that the employment terms "refer[] to and rel[y] on paragraph 7 for the time period during which employment will continue[,]" and that paragraph 7's time period was too vague to be enforced because it was subject to two "anticipated but uncertain events" occurring—Jeremy passing the bar exam and the subsequent discussion of how paragraph 7's time period would be affected if Bill got his license back.

Employees subsequently filed a motion to reconsider and a supporting declaration from Jeremy. Jeremy's declaration included, among other things, transcript excerpts of Jeremy's and Laurie's negotiations on December 31, 2018, and a credit card statement and screen shot from Jeremy's bank that listed certain personal charges for a "Spartan Race" that occurred in June 2019, as well as charges for gas, interest, and a late fee. In relevant part, Employees argued that the Term Sheet's uncertain terms were ambiguous, but the district court could resolve the ambiguity by (1) considering the intent of the parties, (2) examining relevant portions of the transcript of the parties' negotiations on December 31, 2018, and (3) supplying "a reasonable time for performance." Employees further argued that Jeremy's and Sarah's claims for reimbursement of the expenses they incurred for the Spartan races did not constitute labor or services under Idaho Code section 45-601 and, therefore, were not barred by the statute of limitations set forth by Idaho Code section 45-614. Litster Frost opposed the motion for reconsideration and moved to strike the portions of Jeremy's declaration discussed above, arguing Employees failed to timely introduce this evidence into the record.

The district court struck the portions of Jeremy's declaration pertaining to the personal expenses he incurred for the June 2019 Spartan Race and denied Employees' motion to reconsider. The district court agreed with Litster Frost that Employees could have presented the transcript excerpts at summary judgment. However, the district court exercised its discretion to consider the excerpts and determined that the evidence failed to create any genuine issues of material fact.

Thereafter, Litster Frost filed an amended memorandum of costs and attorney fees seeking an award of $94,252.00. Litster Frost argued that fees were authorized under three statutes. First, Litster Frost argued that fees were authorized under Idaho Code section 45-612(2) because Employees' claims were false. Second, Litster Frost argued that fees were proper under Idaho Code section 12-120(3) because it was the prevailing party on Employees' breach of contracts claims. Lastly, Litster Frost argued that fees were available under Idaho Code section 12-121 because Employees pursued their claims "frivolously, unreasonably and without foundation." In response, Employees filed a motion to disallow attorney fees and an amended motion to disallow attorney fees. Neither of these motions were included in the record on appeal.

The district court entered an order granting Employees' motion to disallow attorney fees. The district court concluded that Litster Frost was not entitled to fees under Idaho Code section 45-612 because there was no evidence Employees' claims were "knowingly false at the time the

8

Complaints were filed." The district court further determined Litster Frost was not entitled to fees under sections 12-121 because there was "no evidence to show the case was brought frivolously, or unreasonably." However, the district court's order did not address whether fees were available under Idaho Code section 12-120(3), and Litster Frost filed a motion to reconsider. The district court denied the motion to reconsider, holding that Idaho Code section 45-612 precluded Litster Frost from recovering fees under Idaho Code section 12-120(3) because the gravamen of Employees' claims was for wages and other compensation and because Idaho Code section 45-612 provided the exclusive remedy available to an employer for attorney fees when an employee has brought a claim for wages.

Employees timely appealed to this Court. Litster Frost cross-appealed on the issue of the denial of its attorney fees.

## II. STANDARDS OF REVIEW

"When reviewing a summary judgment ruling or a ruling on a motion to reconsider a summary judgment order, this Court applies the same standard utilized by the district court in deciding the motion." *Christiansen v. Potlatch #1 Fin. Credit Union*, 169 Idaho 533, 540, 498 P.3d 713, 720 (2021). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "If the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this Court exercises free review." *BrunoBuilt, Inc. v. Erstad Architects, PA*, 171 Idaho 928, 528 P.3d 531, 540 (2023) (quoting *Krinitt v. Idaho Dep't of Fish & Game*, 162 Idaho 425, 428, 398 P.3d 158, 161 (2017)).

Generally, "[a]ll disputed facts are to be construed liberally in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party." *Foster v. Traul*, 145 Idaho 24, 28, 175 P.3d 186, 190 (2007). However, "[i]n cases where the trial court will sit as the trier of fact, the trial court 'is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences.' " *Eagle Springs Homeowners Ass'n, Inc. v. Rodina*, 165 Idaho 862, 868, 454 P.3d 504, 510 (2019) (quoting *P.O. Ventures v. Loucks Family Irrevocable Tr.,* 144 Idaho 233, 237, 159 P.3d 870, 874 (2007)). "Resolution of the possible conflict between the inferences is within the responsibilities of the fact finder." *Id.* (quoting *P.O. Ventures*, 144 Idaho at 237, 159 P.3d at 874).

9

"Whether an ambiguity exists in a legal instrument is an initial question of law, over which this Court exercises free review." *Sommer v. Misty Valley, LLC*, 170 Idaho 413, 424, 511 P.3d 833, 844 (2021) (citation omitted). "If the Court finds an ambiguity, the interpretation of the contract term is a question for the fact-finder." *Porcello v. Est. of Porcello,* 167 Idaho 412, 423, 470 P.3d 1221, 1232 (2020) (citation omitted).

Lastly, "[t]his Court freely reviews questions of statutory interpretation." *Manning v. Micron Tech., Inc.*, 170 Idaho 8, 12, 506 P.3d 244, 248 (2022) (citing *Florer v. Walizada*, 168 Idaho 932, 935, 489 P.3d 843, 846 (2021)).

### III.   ANALYSIS

**A. The district court did not err by granting summary judgment on Employee's breach of contract claims because the Term Sheet was unenforceable.**

The district court granted summary judgment in favor of Litster Frost on Employees' breach of contract claims, concluding the Term Sheet was unenforceable and nonseverable. The district court explained that the Term Sheet as a whole was "not an agreement to specific terms, but rather an agreement to come to an agreement on those terms sometime in the future." On appeal, the parties do not dispute that certain provisions of the Term Sheet are unenforceable agreements to agree. Rather, the parties dispute whether paragraphs 27-32 of the Term Sheet outlining items to be agreed upon in the future could be severed, leaving paragraphs 1, 8, and 24 to create an enforceable employment agreement. These paragraphs state in relevant part:

1. Laurie Litster Frost and Jeremy Litster are working together to determine how to share net profits of the firm as determined by a third-party auditor each reporting period wherein the accounts are finalized, 50% to Laurie and 50% to Jeremy. Jeremy and Laurie will agree on the reporting periods, draws and other compensation. This is prospective. This will be done in a way that is IRS and IRCP [sic] compliant.

. . . .

8. Jeremy Litster, Joe Litster, Sarah Litster, Ryan Litster shall return as full-time employees of the firm. They shall not be terminated during the time outlined in paragraph 7 of this agreement (the outline of time in which Jeremy Litster shall sit for and pass the bar examination), and shall not be terminated, except for cause, such cause to be determined by both Laurie Litster Frost and Jeremy Litster; or, if they cannot agree, by majority vote of the committee outlined above. Everyone comes back at their same roles and same compensation. . . .

. . .

10

24. All other compensation packages in place on 12/13/2018 will be continued and paid as if there was not a termination. This contemplates cars, student loans and therapy.

From Employees' perspective, paragraphs 1, 8, and 24 create an enforceable employment agreement with an ambiguous duration. Based on this ambiguity, Employees contend the district court should have supplied a "reasonable time period" for performance based on extrinsic evidence of Laurie's and Jeremy's contemporaneous negotiations in December 2018. We disagree. Even if we assume the Term Sheet is severable as Employees contend, paragraphs 1, 8, and 24 are unenforceable because essential terms were too indefinite and subject to future negotiations.

"An enforceable contract 'must be complete, definite and certain in all of its material terms, or contain provisions which are capable in themselves of being reduced to certainty.' " *Gomez v. Hurtado*, No. 50279, 2024 WL 3658772, at \*5 (Idaho Aug. 6, 2024) (quoting *Geringer Cap. v. Taunton Props., LLC*, 172 Idaho 95, 529 P.3d 760, 766 (2023)). "[W]here a contract is too vague, indefinite, and uncertain as to its essential terms, and not merely ambiguous, there has been no 'meeting of the minds' which is necessary for contract formation and courts will 'leave the parties as [it] found them.' " *Alexander v. Stibal*, 161 Idaho 253, 260, 385 P.3d 431, 438 (2016) (alterations in original) (quoting *Silicon Int'l Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 551, 314 P.3d 593, 606 (2013)). Furthermore, "[n]o enforceable contract comes into being when parties leave a material term for future negotiations, creating a mere agreement to agree." *Gomez* at \*5 (quoting *Treasure Valley Home Sols., LLC v. Chason*, 171 Idaho 655, 659, 524 P.3d 1272, 1276 (2023)).

*1. Paragraph 1 is an unenforceable agreement to agree.*

The district court concluded that paragraph 1, which "characterizes the entire Term Sheet," was an unenforceable agreement to agree based on its prospective language. Employees contend the prospective language "create[s] ambiguity, which allowed the district court to construe the intent of the parties" and extrinsic evidence to resolve paragraph 1's indefiniteness.

"The court's objective in constructing a contract is to ascertain and give effect to the intent of the parties." *Bilow v. Preco, Inc.*, 132 Idaho 23, 27, 966 P.2d 23, 27 (1998) (quoting *George v. University of Idaho*, 121 Idaho 30, 35, 822 P.2d 549, 554 (Ct.App. 1991)). "If the contract is clear and unambiguous, the court gives effect to the language employed according to its ordinary meaning." *Id.* (quoting *Dille v. Doerr Distributing Co.*, 125 Idaho 123, 125, 867 P.2d 997, 999 (Ct.App. 1993)). "In construing unambiguous terms of a contract, the court ascertains the parties' intent from the language contained in the contract." *Id.* (quoting *George*, 121 Idaho at 35, 822 P.2d

11

at 554). "If the contract is ambiguous, extrinsic evidence may be considered to discern the true intent of the parties." *Id.* (citation omitted). "Therefore, unless the employment agreement is ambiguous, it is improper to consider extrinsic evidence." *Id.*

"For a contract term to be ambiguous, there must be at least two different reasonable interpretations of the term, or it must be nonsensical." *Swanson v. Beco Const. Co.*, 145 Idaho 59, 62, 175 P.3d 748, 751 (2007) (internal citations omitted). "There are two types of ambiguity, patent and latent." *Porcello v. Est. of Porcello*, 167 Idaho 412, 423, 470 P.3d 1221, 1232 (2020) (quoting *E. Side Highway Dist. v. Delavan,* 167 Idaho 325, 342, 470 P.3d 1134, 1151–52 (2019)). A patent ambiguity exists on the face of the document, while "[a] latent ambiguity exists where an instrument is clear on its face, but loses that clarity when applied to the facts as they exist." *Thurston Enterprises, Inc. v. Safeguard Bus. Sys., Inc.*, 164 Idaho 709, 718, 435 P.3d 489, 498 (2019) (quoting *Knipe Land Co. v. Robertson*, 151 Idaho 449, 455, 259 P.3d 595, 601 (2011)).

First, Employees argue that the phrase, "[Laurie] and [Jeremy] are working together to determine how to share net profits of the firm[,]" is ambiguous because it can reasonably be interpreted to mean "that the parties agreed to sharing 50% net profits but did not express 'how' such profits would become payable." This interpretation, however, is not reasonable because nothing in the language indicates the parties had in fact agreed to split net profits *at the time* the Term Sheet was signed. Rather, the unambiguous language reflects nothing more than Laurie and Jeremy agreeing to come to an agreement, sometime in the future, to split profits in a way that is compliant with the federal tax code and ethical constraints on the practice of law. Second, Employees argue the phrase, "[t]his is prospective," is ambiguous because extrinsic evidence suggests that the parties intended the profit splitting to begin the day after Jeremy signed the Term Sheet, on January 1, 2019. To support this argument, Employees direct this Court to consider Jeremy's declaration in opposition to summary judgment, which states: "The word 'prospectively' was used to denote that the profit split would begin January 1, 2019[,] and would not be split retroactively[.]" However, even if we were to accept Employees' interpretation of this term, this would not render the remaining language of paragraph 1 enforceable. Laurie and Jeremy left essential terms of a profit splitting agreement for future negotiations, such as: (1) "determin[ing] how to share net profits . . . in a way that is IRS and IRCP [sic] compliant" and (2) agreeing on the applicable "reporting periods, draws and other compensation." For these reasons, we conclude the district court's determination that paragraph 1 was merely an agreement to agree was correct.

12

*2. Paragraphs 8 and 24 are not enforceable because essential terms were too indefinite and subject to future negotiations.*

Next, the district court held that paragraphs 8 and 24 were unenforceable because the duration of Employees' employment, an essential term, was tethered to an uncertain timeframe in paragraph 7 and future resolution of what would happen to Jeremy's right of first refusal and the timing of the exercise of that right if, or when, Bill gets his law license back under paragraph 30. Paragraph 8 provides:

> Jeremy Litster, Joe Litster, Sarah Litster, Ryan Litster shall return as full-time employees of the firm. They shall not be terminated during the time outlined in paragraph 7 of this agreement (the outline of time in which Jeremy Litster shall sit for and pass the bar examination), and shall not be terminated, except for cause, such cause to be determined by both Laurie Litster Frost and Jeremy Litster; or, if they cannot agree, by majority vote of the committee outlined above. Everyone comes back at their same roles and same compensation. . . .

Paragraph 7, which is referenced in paragraph 8, states:

> Laurie Litster Frost will give Jeremy Litster an exclusive right of refusal to purchase the firm after Jeremy Litster passes the bar exam. Such offer shall remain open until three months after the results of the bar examination are released and can be exercised at any time during the three month window by Jeremy. This offer shall be renewable for a period of six months should Jeremy Litster be unsuccessful in passing the bar exam at his first sitting. Valuation of the firm shall begin no later than June 1, 2019.

And paragraph 30 was an item that was supposed to be determined by January 31, 2019, and impacts the right of first refusal in paragraph 7:

> A discussion of what happens when Bill gets his license back and how this affects the timing and option of the right of first refusal referred to in #7 above.

The district court held that paragraph 7's time frame was vague, rendering it unenforceable, because it relied on two "anticipated but uncertain events" occurring, Jeremy passing the bar exam and the discussion concerning Bill getting his license back and what it would do to Jeremy's right of first refusal:

> While paragraphs 8, 23 and 24 purport to establish employment conditions, all are tied to an anticipated but uncertain event described in paragraph 7, i.e, [sic] "after Jeremy Litster passes the bar exam". It's important to note that paragraph 7 does not in itself establish, or even suggest, continued employment for Jeremy, but rather is framed as the parties' intent to someday have Laurie give Jeremy an opportunity to purchase LFIL, if that sale is compliant with the rules of the IRS and, presumably, the Idaho Rules of Professional Conduct. Compounding the uncertainty contained

13

in paragraph 7 is the language of paragraph 30 "A discussion of what happens when Bill gets his license back and how this affects the timing and option of the right of first refusal referred to in #7 above," language which suggests that should another anticipated but uncertain event occur, the entirety of paragraph 7 could be rendered moot.

. . .

. . . [G]iven that paragraph 7's time for completion is based on an anticipated but uncertain event, with no clear date for performance articulated, paragraph 7 is too vague to be enforceable.

Employees concede the timeframe in paragraph 7 is uncertain. However, Employees argue that this uncertainty is not fatal because (1) the district court "should have supplied the duration of the employment provisions in the Term Sheet that would have favored enforceability[;]" and (2) paragraph 7's ambiguous timeframe could be resolved by considering extrinsic evidence of the parties' contemporaneous negotiations. In support of this argument, Employees cite to *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, which states, "[w]here no time is expressed in a contract for its performance, the law implies that it shall be performed within a reasonable time as determined by the subject matter of the contract, the situation of the parties, and the circumstances attending the performance." 149 Idaho 299, 318 (2010) (quoting *Curzon v. Wells Cargo, Inc.*, 86 Idaho 38, 43, 382 P.2d 906, 908 (1963)). Employees' arguments are unavailing.

First, the timeframe set forth in paragraph 7 is not merely ambiguous. Rather, it is subject to two conditions precedent that were not certain and as a result, render the entire provision unenforceable. "A condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due." *Steiner v. Ziegler–Tamura Ltd.,* 138 Idaho 238, 242, 61 P.3d 595, 599 (2002) (citing *World Wide Lease, Inc. v. Woodworth,* 111 Idaho 880, 887, 728 P.2d 769, 776 (Ct.App.1986)). In *Maroun v. Wyreless Systems, Inc.*, we addressed the enforceability of an ambiguous contract provision that was subject to a condition precedent. 141 Idaho 604, 609, 114 P.3d 974, 979 (2005) *abrogated on other grounds by Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho 586, 329 P.3d 368 (2014). There, the president of startup Wyreless Systems, Inc. ("Wyreless") sent a letter to Maroun setting forth the terms of Maroun's employment agreement with Wyreless. *Id*. Among the terms stated in the letter were that Maroun would receive a $300,000 bonus for the successful organization of Wyreless and 15 percent of the issued equity in Wyreless. *Id.* The letter explained that the organizational bonus and 15 percent equity "will need to be tied to agreeable milestones." *Id.* Maroun was fired before he received the 15 percent equity he was promised and brought suit demanding the equity and other relief. *Id.*

14

Despite the ambiguity associated with the phrase "agreeable milestones," this Court held that "[t]he provision requiring the equity be 'tied to agreeable milestones' is merely an agreement to agree in the future on a condition precedent" which never may occur:

> Although it may be unclear what the "agreeable milestones" would be, the agreement in this case is not ambiguous as to when payments for equity would be considered. The provision requiring the equity be "tied to agreeable milestones" is merely an agreement to agree in the future on a condition precedent to any obligation to pay. . . . The provision dealing with entitlement to 15% of issued equity is unenforceable because it is merely an agreement to agree on something which may never occur. The district court's grant of summary judgment with respect to the claim of issued equity is affirmed.

*Id.* at 614, 114 P.3d at 984 (internal citations and quotations omitted).

Like the contract provision in *Maroun*, even if the timeline set forth in paragraph 7 is ambiguous, the Term Sheet tethered this timeframe to two anticipated, but uncertain events: Jeremy passing the bar and the impending discussion of how the timeframe would be affected if Bill got his law license back. Therefore, the timeframe set forth in paragraph 7 and, consequently, paragraph 8 is "unenforceable because it is merely an agreement to agree on something which may never occur." *Id.*

Second, even if paragraph 7's timeframe was merely ambiguous, Employees' extrinsic evidence of the parties' negotiations does not establish that the parties intended for the employment agreement to guarantee Jeremy, Joe, Sarah, and Ryan employment for two years. Employees first point to an early draft of the Term Sheet that explicitly contained a two-year non-termination agreement and a transcript excerpt from the parties' negotiations. However, the fact that the parties originally included an explicit two-year employment condition in an early draft of the Term Sheet, which was subsequently removed, undercuts Employees' argument that the parties intended for the employment agreement to span two years. Had the parties intended to create an employment agreement spanning two years, they would not have removed that language from the final iteration of the Term Sheet. Employees also point to a transcript excerpt which consists of a general discussion between Jeremy and Laurie, the Term Sheet's parties, and James Dorman, Dave Litster, and Tony Litster, who witnessed the Term Sheet's signing concerning the anticipated timeframe for Jeremy to pass the bar exam:

> Jeremy:  So on number 7, the thing that changed on number 7 from what was on mine, was that - having it be bar passing versus bar admission. Like passing a test versus bar admission.

15

| | |
|---|---|
| James: | What was written - - so I drafted this. What I was thinking there was, you don't get to hold people hostage by like well, I didn't take the bar for 25 years so the agreement is in place forever. |
| Jeremy: | Totally. Totally. |
| James: | And there is also a reasonable period of time, like, after you're admitted. |
| Tony: | What is that time frame? |
| Laurie: | It's about three months. |
| James: | So you take the bar in February, you get admitted in late April, early May. |
| Dave: | You get admitted immediately, right? |
| Jeremy: | How far from the passing do you – |
| James: | Two weeks. |
| James: | But, you don't want to be held hostage, by some arbitrary date because if you don't pass |
| Jeremy: | No, I agree with this. |
| Jeremy: | And you can't hold her hostage for ten years because you decide you're not going to take the bar and get admitted for whatever reason. |
| Jeremy: | Totally agree, totally agree. |
| Tony: | Is that clean then? Like that's clear? |
| Dave: | Unless you want to modify the language. |
| Tony: | Because we didn't know the dates on that. |
| James: | Well, let's say you don't pass the bar the first time. The first time you can take it is in February of next year. You don't get the results til [sic] May. If you fail then, you can take it again in July and you won't get your results until late September, October. |
| Jeremy: | Uh huh. |
| James: | And, I don't know, there should be some sunset that lets her get out of here. |
| Jeremy: | Yeah. |
| James: | If you fail it three times, then can she say, look, you've had your shot, what are we going to do at this point. |
| Jeremy: | Yeah. |
| James: | I mean, there has to be a sunset. |
| Jeremy: | Totally agree, yeah. |

James: And if you don't graduate in February of next year then you bump everything back eight months or ten months or whatever. Like, I think it you -- I think it should be at least two shots after graduation.

Jeremy: Yeah.

Notably, nothing in this transcript established that Laurie, LFIL's sole owner at this time, agreed to anything. The transcript only reflects Jeremy's subjective understanding. Furthermore, nothing in this transcript explicitly states that the employment duration would span two years. In short, none of this extrinsic evidence, if considered, supports Employee's interpretation of the Term Sheet.

For these reasons, we conclude the district court correctly determined that paragraphs 8 and 24 are not enforceable because essential terms were too indefinite and subject to future negotiations. Because paragraphs 1, 8, 24 are themselves unenforceable, we need not address whether the Term Sheet was severable. For these reasons, we affirm the district court's order granting summary judgment in favor of Litster Frost on Employees' breach of contract claims.

**B. The district court erred by granting summary judgment on Sarah's reimbursement claim but did not err in granting summary judgment on Jeremy's reimbursement claim.**

Jeremy and Sarah each brought claims for reimbursement of certain expenses they incurred in connection with Spartan races. The district court granted summary judgment in favor of Litster Frost after concluding that the claims were time barred under the one-year statute of limitations set forth in Idaho Code section 45-614, part of the Idaho Wage Claim Act. On appeal, Employees contend that the business expenses Jeremy and Sarah personally incurred on behalf of LFIL were not wages and, therefore, the claims were not subject to section 45-614. Employees also argue that "[i]t is undisputed that Jeremy paid $1,540.68 . . . for LFIL's budgeted expenses." In response, Litster Frost contends that this argument "fails" because Employees have not cited any statute or case law that would remove their reimbursement claims from section 45-614's rubric of "additional salary, wages, penalties or liquidated damages."

Initially, Litster Frost argues the district court struck the only evidence supporting Jeremy's reimbursement claim and that Employees did not challenge the district court's decision on appeal. We agree. Therefore, we need only consider whether the district court erred by granting summary judgment on Sarah's reimbursement claim. For the reasons set forth below, we conclude that issues of material fact exist as to whether Sarah's reimbursement claim fell within Idaho's Wage Claim Act ("IWCA").

The IWCA "governs an employee's claim to wages against a former employer." *Smith v. Kount, Inc.*, 169 Idaho 460, 463, 497 P.3d 534, 537 (2021) (quoting *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 189, 108 P.3d 332, 336 (2005)). The term "wages" is defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece[,] or commission basis." I.C. § 45-601(7). A "wage claim" is defined as "an employee's claim against an employer for compensation for the employee's own personal services, and includes any wages, penalties, or damages provided by law to employees with a claim for unpaid wages." I.C. § 45-601(6). "Wages earned over a longer period of time [than one month], such as an annual bonus based upon net profits, will come due during a specific calendar month and are covered by the statute." *Manning v. Micron Tech., Inc.*, 170 Idaho 8, 12, 506 P.3d 244, 248 (2022) (alteration in original) (quoting *Paolini v. Albertson's Inc.*, 143 Idaho 547, 549, 149 P.3d 822, 824 (2006)). "Furthermore, so long as an employer pays its employees a minimum wage for all hours worked at least once a month, the terms of any additional compensation may be negotiated between the employer and the employee." *Id.* (citing *Smith*, 169 Idaho at 463, 497 P.3d at 537).

Idaho Code section 45-614 sets forth a two-year statute of limitations for claims of "unpaid" wages, but if an employee seeks "additional" wages, a claim must be brought within twelve months from the accrual of the cause of action:

> Any person shall have the right to collect wages, penalties and liquidated damages provided by any law or pursuant to a contract of employment, but any action thereon shall be filed either with the department or commenced in a court of competent jurisdiction within two (2) years after the cause of action accrued, provided, however, that in the event salary or wages have been paid to any employee and such employee claims additional salary, wages, penalties or liquidated damages, because of work done or services performed during his employment for the pay period covered by said payment, any action therefor shall be commenced within twelve (12) months from the accrual of the cause of action. It is further provided that if any such cause of action has accrued prior to the effective date of this act, and is not barred by existing law, action thereon may be commenced within six (6) months from the effective date of this act. In the event an action is not commenced as herein provided, any remedy on the cause of action shall be forever barred.

I.C. § 45-614. "A cause of action for the collection of wages accrues when an employee has a right to collect the wages that are allegedly owed to him." *Manning v. Micron Tech., Inc.*, 170 Idaho 8, 13, 506 P.3d 244, 249 (2022) (quoting *Callenders, Inc. v. Beckman*, 120 Idaho 169, 174, 814 P.2d 429, 434 (Ct. App. 1991)).

18

Sarah claims that she is owed $3,939.78 in expenses she incurred for charges pertaining to two Spartan races in February and May of 2019—expenses she characterizes as "business" expenses—and claims were approved by Jeremy when he was LFIL's Director of Operations. Litster Frost does not dispute that expenses were incurred. Nor is it disputed that Employees were paid at least a minimum wage during their employment.

It is not clear, however, whether reimbursement for these expenses was compensation for services Sarah provided (i.e., the races were something she personally wanted to do and LFIL agreed to pay the expenses for her as a job benefit). If LFIL agreed to reimburse Sarah so she could participate in the Spartan races, this benefit could constitute a "wage" as contemplated by section 45–601. In that instance, Sarah's claim to recover these expenses would fall within the ambit of "claims additional salary, wages, penalties or liquidated damages, because of work done or services performed . . ." and would therefore be time barred. If, however, the Spartan race expenses were incurred for the benefit of LFIL (e.g., a marketing opportunity) and Sarah, in essence, agreed to advance these business expenses for the benefit of LFIL, her claim to recover these expenses would not constitute a "wage claim" because Sarah is not seeking to recover compensation for her "own personal services." I.C. § 45-601(6). Thus, in that instance, Sarah's claim would not fall under ICWA or be time-barred under Idaho Code section 45-614.

"When ruling on a motion for summary judgment, the trial court must determine whether the evidence, when construed in the light most favorable to the nonmoving party, presents a genuine issue of material fact or shows that the moving party is not entitled to judgment as a matter of law." *Chandler v. Hayden*, 147 Idaho 765, 769, 215 P.3d 485, 489 (2009) (citation omitted). "A material fact is one upon which the outcome of the case may be different." *Johnson v. N. Idaho Coll.*, 153 Idaho 58, 67, 278 P.3d 928, 937 (2012) (quoting *Peterson v. Romine*, 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998)). "The moving party bears the burden of proving the absence of material facts." *Chandler*, 147 Idaho at 769, 215 P.3d at 489 (citation omitted). "Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact." *Id.* (citation omitted).

In their briefing to the district court, Litster Frost argued that Sarah's claim for reimbursement could not withstand summary judgment because Employees were unable to produce admissible evidence in support of this claim. Specifically, it pointed to an interrogatory in which it asked for details concerning each claimed expenditure. Employees failed to respond

with any information. Employees responded to Litster Frost's summary judgment motion by filing Sarah's declaration, which provided a list of expenditures for which she claimed reimbursement. Litster Frost then filed a reply brief, which did not address Sarah's claim with much specificity. Rather, Litster Frost argued that *Jeremy's* reimbursement claim was time-barred under the one-year statute of limitations set forth in Idaho Code section 45-614, and that the district court should reach the "same result" as to Joe's, Sarah's, and Ryan's claims. However, Litster Frost did not produce any evidence disputing any fact listed in Sarah's declaration or otherwise attempt to address the nature of the claimed expenses. Sarah's declaration was sufficient to survive the motion for summary judgment. Without further clarification, we cannot conclude as a matter of law that Sarah's claim for reimbursement falls within the scope of the IWCA based on the record before us. Consequently, we reverse the district court's decision dismissing Sarah's reimbursement claim on summary judgment and remand for further proceedings consistent with this decision.

## C. We will not address Employees' arguments concerning their claim for fraud in inducement and Joe's deferred bonus claim.

In their opening brief on appeal, Employees raised an issue concerning whether Jeremy should have the right to amend his complaint to add a cause of action for fraudulent inducement if Laurie argued that her intention was never to split profits with Jeremy in 2019. However, Employees provided no cogent argument or legal authority on this issue in their opening or reply briefs. "Under Idaho Appellate Rule 35, if an issue raised by an appellant is not supported by 'any cogent argument or authority, it cannot be considered by this Court.' " *Med. Recovery Servs. v. Moser*, 173 Idaho 536, ___, 545 P.3d 999, 1007–08 (2024) (quoting *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010)). Consequently, "to the extent that an assignment of error is not argued and supported in compliance with the [Idaho Appellate Rules], it is deemed to be waived." *Dawson v. Cheyovich Family Tr.*, 149 Idaho 375, 383, 234 P.3d 699, 707 (2010).

Employees also raised an issue as to whether "the district court abused its discretion by failing to examine the evidence" that Litster Frost breached promises to pay Joe (1) unpaid wages that were owed to him by Idaho Injury Lawyers, P.A. when he was hired in 2009, and (2) a bonus for his work performed for LFIL. However, the district court dismissed Joe's wage claim on summary judgment after concluding the claims were time barred under Idaho Code section 45-614, and Employees have not challenged that aspect of the district court's decision. "[A] general attack on the findings and conclusions of the district court, without specific reference to evidentiary

20

or legal errors, is insufficient to preserve an issue." *Id*. (quoting *Bach*, 148 Idaho at 790, 229 P.3d at 1152). Therefore, we decline to consider this argument.

**D. The district court erred by declining to award attorney fees to Litster Frost.**

We next address Litster Frost's cross-appeal from the district court's order denying its request for attorney fees under Idaho Code section 12-120(3). The district court concluded that Litster Frost was not entitled to attorney fees under section 12-120(3) because the gravamen of Employees' claims concerned "unpaid wages and other compensation" and the exclusive basis for attorney fees was governed by the IWCA. Litster Frost contends that the district court erred because Employees' breach of contract claims were predicated on an alleged employment agreement—a "commercial transaction" within the purview of section 12-120(3)—and the recovery sought was based on this commercial transaction. According to Litster Frost, the district court should have apportioned fees, awarding fees on the breach of contract claims, but not the IWCA claims. In response, Employees contend the district court correctly rejected Litster Frost's request because Employees' breach of contract claims sought recovery of non-payment of wages and, therefore, the exclusive remedy for attorney fees available to Litster Frost is Idaho Code section 45-612(2) of the Idaho Wage Claim Act. We reverse the district court's decision.

"The awarding of attorney fees and costs is within the discretion of the district court and is subject to the abuse of discretion standard of review." *Breckenridge Prop. Fund 2016, LLC v. Wally Enterprises, Inc.*, 170 Idaho 649, 662, 516 P.3d 73, 86 (2022) (citing *Idaho Transp. Dep't v. Ascorp, Inc.*, 159 Idaho 138, 140, 357 P.3d 863, 865 (2015)). "When this Court considers whether the district court abused its discretion, it applies a four-part test: (1) whether the court correctly perceived the issue as discretionary; (2) whether the court acted within the outer boundaries of its discretion; (3) whether the court acted consistently with the legal standards applicable to the specific choices available; and (4) whether the district court reached its decision by an exercise of reason." *Id*. (citing *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)). Our analysis here focuses on the third and fourth prongs: whether the district court acted consistently with the applicable legal standards and exercised reason when it concluded that attorney fees were not awardable under section 12-120(3) because the gravamen of Employees' claims is for unpaid wages and other compensation under the IWCA.

Section 12-120(3) of the Idaho Code entitles the prevailing party to an award of attorney fees in any civil action to recover on a contract for services:

> In any civil action to recover on [a] . . . contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

I.C. § 12-120(3).

In contrast, Idaho Code section 45–612(2) of the IWCA entitles a prevailing *employer* to attorney fees in a wage claim dispute where an employee knowingly makes a false claim for wages:

> Any employee initiating a civil proceeding to collect unpaid wages or other compensation, which is based in whole or in part on a false claim which the employee knew to be false at the time the employee brought the action, shall be liable for attorney's fees and costs incurred by the employer in defending against the false claim.

I.C. § 45-612(2). "Such a determination is a question of fact." *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 192, 108 P.3d 332, 339 (2005).

Litster Frost acknowledges that, in *Stiffler v. Hydroblend, Inc.*, this Court held that an employer—who prevailed against a former employee's breach of contract claims—was not entitled to an award of attorney fees under Idaho Code section 12-120(3) because section 45-612(2) of the IWCA provides the exclusive remedy available to employers for attorney fees in wage claim disputes. 172 Idaho 630, 647-48, 535 P.3d 606, 623–24 (2023) (hereafter "*Hydroblend*"). However, Litster Frost contends attorney fees should still be awarded to them under section 12-120(3)—notwithstanding our holding in *Hydroblend*—because: (1) the main focus of the Term Sheet was to create a framework for Jeremy Litster gaining ownership of LFIL and half of the profits of LFIL, rather than a framework for employment, and (2) *Hydroblend* "did not expressly overrule" a line of cases in which attorney fees were awarded under section 12-120(3) on a claim-by-claim basis regardless of whether a statutory wage claim was also involved.

In *Hydroblend*, Stiffler was discharged by his employer over a dispute concerning the calculation of his incentive pay. *Id*. at 636–37, 535 P.3d at 612–13. Stiffler had entered into an employment contract with his employer in 2019 ("2019 Contract"), which included commission-based incentive pay. *Id*. at 635-36, 535 P.3d at 611-12. Two years later, Stiffler and the employer entered into a new employment agreement ("2021 Contract") which included terms for severance pay, compensation, and a mediation and arbitration clause. *Id*. A dispute arose between Stiffler and the employer regarding incentive pay on a particular account. *Id*. at 636, 535 P.3d at 612. After the employer advised Stiffler that it did not owe incentive pay on the account, Stiffler, through counsel, sent a letter demanding payment of the incentive pay and rescission of the 2021 Contract.

*Id.* The demand advised the employer that Stiffler would continue to report to work. *Id.* The employer responded that no incentive pay was due and declined to rescind the 2021 Contract. *Id.* Stiffler's lawyer replied to the employer that the refusal to pay constituted termination for cause and demanded severance pay. *Id.* at 636–37, 535 P.3d at 612–13. Stiffler filed suit against the former employer, alleging in relevant part claims for unpaid wages and breach of contract. *Id.* Stiffler sought damages "for a breach of contract under the Wage Claim Act on two grounds: (1) failure to pay incentive pay and (2) failure to pay severance." *Id.* at 637, 535 P.3d at 613. Following a series of motions and briefing by the parties, the district court dismissed most of Stiffler's claims after concluding they were subject to the mediation and arbitration provision of the 2021 Contract. *Id.* at 637-38, 535 P.3d at 613–14. The district court further determined that Stiffler was not entitled to treble damages under the IWCA because the employer timely tendered the 2020 incentive payment following his termination. *Id.* at 638, 535 P.3d at 614. In reviewing Stiffler's breach of contract claims, the district court concluded that the 2019 Contract governed the incentive pay Stiffler earned in 2020, and issues of material fact precluded the district court granting summary judgment with respect to whether employer breached the 2019 Contract. *Id.* However, the district court further determined that the 2021 Contract governed Stiffler's severance pay and, therefore, the issue of severance pay was subject to arbitration. *Id.* Stiffler appealed, arguing the district court erred by concluding he was not entitled to treble damages on all wages under the IWCA and by compelling arbitration of some of his claims. *Id.* at 635, 535 P.3d at 611.

The employer ultimately prevailed on appeal and requested an award of fees under Idaho Code sections 12-120(3) and 12-121. *Id.* at 647, 535 P.3d at 623. However, we denied this request, holding that sections 12-120(3) and 12-121 were not appropriate sources of law for awarding attorney fees because the underlying cause of action was a wage claim dispute:

> [Employer] seeks fees under Idaho Code sections 12-120(3) and 12-121. This Court has previously determined that section 12-121 is not an appropriate source for awarding attorney fees in wage claim disputes, even where other claims were involved. *See Bilow v. Preco, Inc.*, 132 Idaho 23, 33, 966 P.2d 23, 33 (1998) (denying attorney fees where an employee sought an award under I.C. § 12-120(3), alleging unpaid wages and breach of contract). "The [Wage Claim] Act provides any judgment awarded to a plaintiff under the Act 'may include all costs and attorney's fees reasonably incurred in connection with the proceedings.' " *Lunneborg v. My Fun Life*, 163 Idaho 856, 873, 421 P.3d 187, 204 (2018) (quoting I.C. § 45-615). In short, "Idaho Code [sections] 45-615 and 45-617 are the exclusive code sections under which an employee may recover attorney fees whenever the underlying cause of action is a wage claim pursuant to I.C. § 45–617(4)." *Bilow*,

132 Idaho at 33, 966 P.2d at 33. *See also Hawes v. W. Pac. Timber, LLC*, 167 Idaho 896, 917, 477 P.3d 950, 971 (2020). Likewise, Idaho Code section 45-612(2) is the "exclusive remedy for attorney fees available to an employer when an employee has brought a claim for wages." *Polk v. Larrabee*, 135 Idaho 303, 315, 17 P.3d 247, 259 (2000).

Stiffler has raised multiple issues before this Court, but his underlying cause of action is a wage claim dispute brought under Idaho's Wage Claim Act.

*Id.* at 647–48, 535 P.3d at 623–24 (alterations in original).

Our rationale for reaching this conclusion did not take into account a critical statutory amendment that was made in 1999, the year after *Bilow v. Preco, Inc.* was decided. Moving forward, we abrogate *Hydroblend* to the extent it held that attorney fees could not be awarded pursuant to Idaho Code section 12-120(3) in any case involving a wage claim.

To explain today's decision, we must delve into several of our previous decisions addressing sections 45-612(2)'s and 45-615's exclusivity, beginning with *Bilow*, the case upon which our decision in *Hydroblend* rests. In *Bilow*, this Court addressed whether a prevailing employee in a wage claim dispute could recover attorney fees under section 12–120(3). Bilow, the employee, brought suit for unpaid wages and breach of contract. *See Bilow*, 132 Idaho at 27, 33, 966 P.2d at 27, 33. After prevailing on his claim for treble damages, Bilow requested an award of attorney fees under 45-617(4) for prevailing on his wage claim. *Id.* at 31, 966 P.2d at 31. At that time, section 45-617(4) stated in part, "[a]ny judgment rendered by a court . . . for the plaintiff in a proceeding pursuant to this chapter shall include all costs and attorney fees reasonably incurred . . . ." I.C. § 45-617(4) (1998). The district court declined to award attorney fees, however, because Bilow had failed to make a written demand for payment prior to bringing suit as required under Idaho Code section 45-615 at that time. Section 45-615 stated:

> **Attorneys' fees in suits for wages. —** Whenever a mechanic, artisan, miner, laborer, servant or employee or the director shall have cause to bring suit for wages earned and due according to the terms of his employment, and shall establish, by decision of the court or verdict of the jury, that the amount for which he has brought suit is justly due, and that a demand has been made, in writing, at least five (5) days before suit was brought, for a sum not to exceed the amount so found due, it shall be the duty of the court before which the case shall be tried to allow to the plaintiff a reasonable attorney's fee, in addition to the amount found due for wages, to be taxed as costs of suit.

I.C. § 45-615 (1998). As an alternative remedy, Bilow sought attorney fees under section 12-120(3). *Bilow*, 132 Idaho at 31, 966 P.2d at 31.

24

The Court rejected Bilow's argument that, because he also brought a claim for wages under a breach of contract theory, he could seek attorney fees under Idaho Code section 12–120(3). The Court began its analysis by evaluating the Court of Appeals' decision in *Hutchison v. Anderson*, 130 Idaho 936, 950 P.2d 1275 (Ct.App. 1997), which held that section 45-615 provided the exclusive remedy available to a prevailing employee to recover attorney fees when the employee properly brings a claim for wages and treble damages. *Id*. at 31-32, 966 P.2d at 31-32 (citing *Hutchison*, 130 Idaho at 942–43, 950 P.2d at 1281–82). In reaching this conclusion, the *Hutchison* court understandably relied on our prior decisions in *Schoonover v. Bonner County* and *Rodwell v. Serendipity*:

> The Idaho Supreme Court has held that attorney fee awards in suits for wages should be based upon I.C. § 45-615 (then I.C. § 45-605). *Schoonover v. Bonner County*, 113 Idaho 916, 923, 750 P.2d 95, 102 (1988). The Court overturned the decision of the district court which had given an award of attorney fees pursuant to I.C. § 12-121. That Court also declined to award a plaintiff both treble damages and attorney fees on appeal under I.C. § 12-121 when the plaintiff had brought a claim for wages. *Rodwell v. Serendipity, Inc*., 99 Idaho 894, 895, 591 P.2d 141, 142 (1979). The Supreme Court held that an award of attorney fees in addition to treble damages would constitute an unreasonable windfall to the employee and would punish the employer too harshly. *Id*. Therefore, we hold that I.C. § 45-615 is the *exclusive* code section under which an employee can recover attorney fees when the employee properly brings a claim for wages and treble damages under I.C. §§ 45–61[5], –617.

*Id*. (alteration in original) (quoting *Hutchison*, 130 Idaho 942–43, 950 P.2d 1281–82).

Bilow "criticize[d] the *Hutchison* opinion as 'judicial legislation,' arguing that there is no express provision in the wage claim statutes that states that [section] 45–615 is an exclusive source to recover attorney fees" and, therefore, he was free to sue for breach of contract "and seek all the attendant remedies thereto." *Id*. at 32, 966 P.2d at 32. The Court rejected Bilow's argument on two grounds. First, we explained, because the legislature did not indicate whether it intended section 12-120(3) and section 45-617(4) to be exclusive or alternative remedies, the Court was free to consider the practical consequences of both interpretations. *Id*. at 32–33, 966 P.2d at 32–33 (citing *Lawless v. Davis*, 98 Idaho 175, 177, 560 P.2d 497, 499 (1977)). We determined that interpreting section 12-120(3) as an alternative remedy would render the demand requirement set forth in section 45-615 "pointless"—as employees would be able to circumvent this requirement by seeking fees under an alternative statute. *Id*. at 33, 966 P.3d at 33. Consequently, the Court

concluded sections 45-615 and 45-617 "are the exclusive code sections under which an employee can recover attorney fees when the employee brings a claim for wages and treble damages." *Id*.

Second, the Court recognized that Bilow's breach of contract claim was "a pre-existing right of action" but Bilow sought a statutory remedy instead of a common law remedy, which permitted it to interpret the relevant statutory provisions:

> The argument that enactment of Idaho's wage claim statutes does not bar an employee's right to also recover common law remedies is flawed. It is true that a breach of contract claim is a pre-existing right of action that Bilow pursued. However, he sought in relation to his breach of contract claim a statutory remedy, not a common law remedy. The Court is free to apply rules of statutory construction when an obvious ambiguity appears between two statutory provisions. *Lawless,* 98 Idaho at 178, 560 P.2d at 500.

*Id*. Ultimately, the *Bilow* Court determined that the Court of Appeals correctly analyzed the issue in *Hutchison*. *Id*. Thereafter, the Court's analysis in *Bilow* was cited in *Shay v. Cesler*, 132 Idaho 585, 588, 977 P.2d 199, 202 (1999), to support our holding that the legislature also "deliberately limited" prevailing employers in wage claim disputes to seek attorney fees under section 45-612(2). It was again cited in *Polk v. Larrabee*, 135 Idaho 303, 315, 17 P.3d 247, 259 (2000), to support our holding that prevailing employees in a breach of contract action to recover wages could not seek attorney fee under section 12-120(3).

The year after our decision in *Bilow* was published, however, the Idaho Legislature made substantial revisions to the wage claim statutes. Act of Mar. 11, 1999, ch. 51, § 17, 1999 Idaho Sess. Laws 115, 121–22. Relevant to this case, the legislature repealed section 45-615 (1998) as it existed at the time *Bilow* was decided and replaced it with the version of section 45-615 that exists today. *See* 1999 Idaho Sess. Laws at 121–22. Importantly, this new section 45-615 provides that claimants seeking to recover wages are permitted to "pursue any other remedy provided by law" as an alternative to bringing a wage claim under title 45, chapter 6, Idaho Code:

> (1) *As an alternative to filing a wage claim with the department*, any person may assert a wage claim arising under this chapter in any court of competent jurisdiction *or pursue any other remedy provided by law*.
>
> (2) Any judgment rendered by a court of competent jurisdiction for the plaintiff in a suit filed pursuant to this section may include all costs and attorney's fees reasonably incurred in connection with the proceedings and the plaintiff shall be entitled to recover from the defendant either the unpaid wages plus the penalties provided for in section 45-607, Idaho Code; or damages in the amount of three (3) times the unpaid wages found due and owing, whichever is greater.

26

I.C. § 45-615 (emphasis added). Thus, unlike the prior version of section 45-615 that was addressed in *Bilow*, the legislature unambiguously expressed its intent in the new section 45-615 to allow employees to pursue alternative remedies to recover wages. Consequently, this Court is not "free to consider the practical consequences" when determining whether the legislature intended sections 12-120(3) and section 45-615 to be exclusive or alternative remedies, which was a central premise to our analysis in *Bilow*. Given this history, our interpretation of section 45-615 articulated in *Bilow* and applied in *Hydroblend* should be abrogated moving forward.

Turning back to this case, the district court determined that Litster Frost was not entitled to attorney fees under section 12–120(3)—despite prevailing on Employees' breach of contract claims—because (1) the gravamen of these claims are wage claims, as Employees sought to recover "wages due, withheld wages, and prejudgment interest on the amount(s) of said 2018 Employment Agreement[;]" and (2) permitting recovery under section 12-120(3) would render the heightened standard for recovering attorney fees under section 45-612(2) "meaningless." However, as discussed above, section 45-615(1) permits an employee to pursue alternative remedies to recover wages, and Employees elected to pursue recovery of wages under both the IWCA and common law breach of contract. The fact that Employees failed to prove the existence of an enforceable contract is of no moment. "This Court has held that when 'a party alleges the existence of a contractual relationship of a type embraced by section 12-120(3) . . . that claim triggers the application of [I.C. § 12-120(3)] and a prevailing party may recover fees even though no liability under a contract was established.' " *Intermountain Real Props., LLC v. Draw, LLC*, 155 Idaho 313, 320, 311 P.3d 734, 741 (2013) (alterations in original) (quoting *Garner v. Povey,* 151 Idaho 462, 469, 259 P.3d 608, 615 (2011)). With this clarification, we conclude the district court abused its discretion in denying Litster Frost's request for attorney fees under Idaho Code section 12-130(3), because it did not apply the correct legal standard applicable to its decision. Accordingly, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

### E. Attorney fees on appeal.

Litster Frost seeks an award of attorney fees under Idaho Code sections 12-120(3) and 12-121. As set forth above, Employees alleged the existence of a contract, which triggered section 12–130(3), and Litster Frost then prevailed in the action by successfully defending against those contract claims. Therefore, Litster Frost is entitled to recover attorney fees on Employees' breach

27

of contract claims even though no enforceable contract was proven to exist. *See Intermountain Real Props., LLC*, 155 Idaho at, 320, 311 P.3d at 741.

Next, attorney fees may be awarded to a prevailing party under Idaho Code section 12-121 if the proceeding was brought, pursued, or defended frivolously, unreasonably or without foundation. I.C. § 12-121. "When an appellant fails to present a cogent argument as to why he should prevail, an award to his opponent is appropriate." *Turner v. Turner*, 155 Idaho 819, 827, 317 P.3d 716, 724 (2013). "Apportionment of attorney fees is appropriate for those elements of the case that were frivolous, unreasonable, and without foundation." *Millard v. Talburt*, __ Idaho ___, ___, 544 P.3d 748, 765 (2024) (quoting *Idaho Mil. Hist. Soc'y, Inc. v. Maslen*, 156 Idaho 624, 632, 329 P.3d 1072, 1080 (2014)). As discussed above in subsection C, we declined to address Employees' arguments concerning fraudulent inducement because Employees provided no cogent argument or legal authority on this issue. We also declined to address Employees' argument that the district court erred by failing to examine the evidence that Litster Frost breached promises to pay Joe unpaid wages when he was hired in 2009 and a bonus for his work performed for LFIL because Employees failed to properly challenge that aspect of the district court's decision. Lastly, we declined to address Employees' argument that the district court erred in granting summary judgment on Jeremy's reimbursement claim because the district court struck the only evidence supporting this claim and Employees did not challenge that aspect of the district court's decision on appeal. We hold that these claims of error were unreasonable and without foundation, and, therefore, an award of attorney fees is also granted to Litster Frost under Idaho Code section 12-121 for the time spent responding to those claims.

The only remaining issue in this case concerns Sarah's claim for reimbursement. Since there is not yet a prevailing party on that claim, we will not address an award of attorney fees. *Portfolio Recovery Assocs., LLC. v. MacDonald*, 162 Idaho 228, 236, 395 P.3d 1261, 1269 (2017). The district court can address the propriety of an award of attorney fees on Sarah's claim once it makes a prevailing party determination.

## IV. CONCLUSION

For these reasons, we vacate the judgment of the district court and conclude that the district court's orders should be affirmed in part and reversed in part. We reverse the district court's dismissal of Sarah's reimbursement claim and remand for further proceedings consistent with this opinion. However, we affirm the district court's grant of summary judgment on all other claims.

We reverse the district court's decision on attorney fees and remand for further proceedings consistent with this opinion. Attorney fees on appeal are awarded to Litster Frost consistent with opinion. Costs are awarded to Litster Frost pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.